**STEWART**, Trustee of **STONE**, *vs.* **STONE,** *et ux.* AND **WHITE.**—*June,* 1832.

It is an established principle of evidence, that the answer of one defendant cannot be received in evidence against a co-defendant. If the complainant wishes to establish a fact, by the evidence of a co-defendant, he may be examined as a witness on interrogatories, which will afford the other defendant an opportunity to cross examine him.

In a suit in Chancery, by the permanent trustee of an insolvent debtor, it is necessary to show, that the complainant gave bond with surety in that character before filing his bill, and although the allegation in the bill, to that effect, was admitted in an answer by one defendant, yet as respects another defendant, whose answer was silent in relation to that fact, proof of the bond with surety was held requisite.

Stewart *vs.* Stone, *et ux.* and White.—1832.

Where the Court of Appeals is of opinion that a bill dismissed generally by the chancellor, should have been dismissed without prejudice, the practice is to reverse the decree of the chancellor, and pass a new decree.

APPEAL from the Court of Chancery.

On the 24th January, 1829, a bill was filed by the appellant, *David Stewart*, as permanent trustee of *Samuel Stone*, against the appellees, *Samuel Stone* and *Barbara his wife*, and *Jacob White*.

The bill stated, that *Stone* became indebted to one *Chas. Salmon*, in the year 1826, for goods, &c. sold him by *Salmon*, to the amount of $490 53, for which he gave his promissory note, payable in six months, from the 3d May, in the year aforesaid. That said note not being paid at maturity, suit was instituted upon it, and judgment obtained in September, 1828. That a *ca. sa.* issued thereon, which was served on the defendant, on the 3d January, 1829, and on the 6th of the same month, the said defendant applied for, and obtained a personal discharge, under the insolvent laws of the State. That on the 14th of the same month, complainant was duly appointed his permanent trustee, and gave his bond as such, which was duly approved by the Commissioners of Insolvent Debtors for the city and county of *Baltimore*. That the insolvent returned no property on his schedule, at the time of his application. The bill then charges, that at the time *Stone* became indebted to *Salmon*, as aforesaid, he (*Stone*) was in possession of a considerable estate, both real and personal, and evidences of debt amounting in the whole, to not less than $3000. That for the purpose of defrauding his creditors, he, on the 27th August, 1828, united with his wife, in a conveyance of the whole of the said estate to *Jacob White*, in trust for his said wife, as will appear by reference to the conveyance, a copy of which the complainant exhibits with his bill. And he charges, that said conveyance was made by *Stone*, under an expectation of becoming an insolvent debtor, and for the purpose of giving an undue and improper preference to

the wife, and is therefore absolutely null and void, and the property meant to be conveyed, is vested in complainant as trustee of the insolvent. The bill then prays, that said deed may be declared void, and the property be delivered to complainant, for the benefit of the insolvent's creditors, and for general relief.

The answer of *Barbara Stone,* admitted that she had been informed of certain dealings, and mercantile transactions, between her husband, *Samuel Stone* and *Charles Salmon,* though she had no personal knowledge on the subject. She also admitted that she had been informed, "that the said *Samuel Stone* hath made application for the benefit of the insolvent laws of Maryland, and that the complainant hath been appointed his permanent trustee for the benefit of his creditors." The answer then goes on, to deny the fraud charged by the bill, and asserts, that the deed which it seeks to vacate, was made in pursuance of an antenuptial contract, (exhibited with the answer) entered into between her and her present husband, *Stone,* on the 2d February, 1826, five days before their intermarriage.

The answer of *Samuel Stone* the insolvent, admits, that in the spring of 1826, and subsequent to his intermarriage with *Barbara,* he became indebted to *Charles Salmon,* in the manner, and to the amount stated in the bill, for which he gave his note as charged. That suit was instituted thereupon, judgment recovered, this respondent arrested, that he petitioned for, and obtained the benefit of the insolvent laws, as likewise alleged ; that complainant was appointed his permanent trustee, and gave bond as such trustee, which has been approved by the Commissioners of Insolvent Debtors for the city and county of *Baltimore.* After denying the fraud, this answer also sets up the *ante-nuptial* contract, relied on, and exhibited with the answer of *Barbara Stone,* and alleges, that the deed sought to be annulled, was made in pursuance thereof, and not for the purpose of defrauding his creditors.

The answer of *Jacob White*, the other defendant, is not material ; and the proof taken under a commission related merely to conversations with the insolvent, before and after he petitioned, in reference to the claim of another creditor. There was no proof that complainant had given a bond with security, as trustee.

BLAND, chancellor, (at March Term, 1831,) dismissed the bill with costs.

From this decree the complainant appealed to this court.

The cause was argued before MARTIN, STEPHN, and DOR-SEY, J.

*Boyle*, and *Gill*, for the appellant, referred to the act of 1805, *ch.* 110, *sec.* 9. 1807, *ch.* 53. 1812, *ch.* 77, *sec.* 1. 1816, *ch.* 221.

*Scott*, for the appellee, cited, *Winchester vs. The Union Bank of Maryland*, 2 *Gill and Johns.* 73.

MARTIN, J., delivered the opinion of the court.

We think the chancellor was correct in dismissing the bill in this case. In forming this opinion, this court have not taken into consideration, what is deemed the merits of the case, the deed, the ante-nuptial contract, the fraud, and the undue preference, &c. We think that the complainant has not shewed himself entitled, to bring those questions before the chancellor. He has alleged in the bill, that he is the permanent trustee of *Samuel Stone*, and as such, has *given the bond required by law.* To clothe him with the authority he claims in his representative character, this allegation ought to have been admitted by the defendants, or established by other evidence. The record contains no other evidence upon this subject. The answer of *Samuel Stone* admits that complainant was appointed his permanent trustee, and gave bond as such trustee, &c.; but this answer

cannot be used against *Barbara Stone*, the party interested in the deed.   It is an established principle of evidence, that the answer of one defendant cannot be received in evidence against a co-defendant.   If the complainant wishes to establish a fact by the evidence of a co-defendant, he may be examined as a witness on interrogatories, which will afford the defendant an opportunity to cross-examine him.   *Barbara Stone*, in her answer, says, she has been informed, that *Samuel Stone* hath made application for the benefit of the insolvent laws of *Maryland*, and that the complainant hath been appointed his permanent trustee, for the benefit of his creditors.   If this is deemed an admission that the complainant was permanent trustee, yet she is entirely silent as to *the bond*.   There is then, no legal testimony in this record, to shew that complainant ever did give a *bond, with security*, as required of him by law, as the permanent trustee of *Samuel Stone:* that this was necessary, before he went into chancery, see the case of *Winchester, trustee of Williams vs. The Union Bank of Maryland, 2 Gill and Johns.* 73, where the court say, the different insolvent laws of the State constitute one general system, and must be construed together; and so construed, require a *bond, with security*, to be given before a trustee can act as such; without which, he cannot be invested with the character and rights of a trustee.

Under this view of the case, we think the bill ought to have been dismissed, *but without prejudice, &c.*   The complainant ought not to be precluded, if he has equity, from again presenting himself before the court; and to afford him that opportunity, we think it necessary to reverse the decree, but without costs, and to pass a new decree *to* dismiss the bill, *without prejudice, &c.*

**DECREE REVERSED.**