J. DILLY AND A. G. HECKROTTE *vs.* NOTELEY BARNARD.
*December,* 1836.

</div>

That a judgment *mala fide,* and by surprise, arising from the fraudulent and deceptive conduct of the adverse party, by which the complainant has been lulled into a security fatal to his rights, would be against conscience, and ought to be enjoined by a court of chancery, is a clear proposition; but it is equally clear, that no person can enlist a court of equity in his favour, unless he enters *its doors with clean* hands; and when he seeks to be relieved against injustice, arising from the bad faith of his adversary, he ought not to be obnoxious to the same imputation himself.

Dilly and Heckrotte *vs.* Barnard.—1836.

No man is entitled to the aid of a court of equity when that aid becomes necessary by his own fault.

The answer of a defendant, when responsive to the bill, is evidence in his favour, though the equity of the complainant's bill is grounded upon the allegation of fraud.

In cases in which courts of equity and law have concurrent jurisdiction, as in matters of account, it seems, that equity will not relieve against a judgment on the mere ground of the difficulty of making a defence at law, but the case must be one where it was impossible to do so.

If facts essential to the case of either party rest in the knowledge of the opposite party, it is too late after a trial at law, for the losing party to apply to a court of equity for relief upon that ground. He should have filed his bill for a discovery before the trial.

After a verdict and judgment at law, the legal intendment or presumption is, that every thing was proved at the trial which was necessary to maintain the suit. *Per Th. Buchanan, A. J.*

If a complainant omits to state an equitable case in his bill, the court cannot notice it, though established by the proof.—*Ib.*

The rule is well established in this state, that the charges, or allegations of a bill, not admitted by the answer, must be proved.—*Ib.*

APPEAL from the equity side of *Allegany* county court.

On the 27th April, 1831, the appellants filed their bill, charging that, on the 9th October, 1824, the said *Barnard*, being indebted to each of the appellants, and to a certain *John Brandt* in divers sums, to secure the same, and to enable *Barnard* (then insolvent, or greatly embarrassed) to comply with a contract between him and *John Strider*, for walnut musket stocks, agreed in writing with the said *Brandt* and these appellants, to transfer into the hands of the appellants, all the gun stocks at, &c. and also all the plank and walnut timber at, &c. for their own use; and the appellants agreed to pay *Barnard* eight cents for all stocks sawed after the date of the agreement, so soon as there should be one thousand or more sawed, and as soon as the stocks should be delivered at *Harper's Ferry*, to pay off two notes, described in the agreement, in musket stocks, to *John Strider*, and afterwards to pay to the said *John Brandt* the unsettled account now between him and *Barnard*, not to exceed six hundred dollars; after which, the appellants were to receive their claims, and the balance to be paid to *Barnard* or his order.

The agreement also stipulated, that *Barnard* should have possession of a saw mill, the roads leading thereto, and two dwelling houses, until the 1st April, 1825, at a certain rent, for which the appellants agreed to be responsible to amount of seventy-five dollars.   The bill then charged, the continuing insolvency of *Barnard;* that the appellants had no intention of obliging themselves to make further advances of money, but upon the condition that the timber, &c. was to be placed in their hands as their property, to be delivered at *Harper's Ferry* as their property, and the money arising from the sale would therefore pass through their hands, and be by them, after *first* retaining the amount advanced, for making them, applied as expressed in the contract; that *Joseph Dilly* paid on account of said contract one hundred and sixty dollars, sixty-two and a half cents, and A. G. Heckrotte six hundred and sixty-nine dollars, thirty-six cents.   Accounts showing in detail the mode of payment, were filed with the bill; and the bill further charged, that in the fall of 1824, and spring of 1825, *Barnard* delivered at *Harper's Ferry,* a large quantity of said stocks as his own property; that the appellants' advances have not been paid; that in the year 1825, *Barnard* transferred to his son a large part of the timber mentioned in the agreement, which he sold; that although *Barnard* had at all times since the agreement, been indebted to the appellants in a larger sum than they would have been bound to advance under the contract, yet he never did comply with same; that the said *Heckrotte* in 1826 or 1827, attached in the hands of *James Stubblefield* about five hundred dollars, which arose from sale of stocks delivered by *Barnard* to his son as aforesaid, to satisfy him; that said attachment is still pending.   The bill then charged, that in the year 1827, *Barnard* commenced a suit on the aforesaid agreement, against the appellants in *Allegany* county court, to recover damages thereon, and the appellant *Dilly* alleged, that after its institution, he had frequent and repeated conversations with said *Barnard* on the subject of said suit, that said *Barnard* always told *Dilly* to make himself easy on the

subject, that he had no expectation of recovering any damages from him, and even if he could get judgment against him he would never think of compelling payment from him, he, the said *Barnard*, well knowing that *Dilly* had not violated said contract; that the said *Barnard*, in fact, requested the said *Dilly* to make no preparation for the trial of said suit, to summon no witnesses, and go to no expense, that his only object in bringing the suit, was to induce *Heckrotte* to discharge the attachment which he had laid in the hands of *Stubblefield;* that *Dilly*, confiding in these representations of *Barnard*, the necessary preparations for the trial of said cause at law, were not made, and the necessary proofs not had, and that *Barnard* recovered judgment for thirteen hundred and fifteen dollars, fifty-three cents damages, &c. as appears by a copy of the record which was exhibited with the bill. The bill further alleged, that a part of the moneys advanced by the appellants to *Barnard*, on said agreement, could not have been proved at law, the same being confined to the knowledge of *Barnard*, nor could the appellants have proved at law that it was the understanding between them and the said *Barnard*, that they were to retain the sums of money by them advanced out of the *first* money arising from the sale of the stocks, that not appearing in the agreement; and that *Barnard* has issued an execution on his judgment and taken their property. The bill then prayed for a subpœna, injunction against proceeding on the judgment, and for general relief. An injunction was awarded by *Shriver, A. J.* on the 19th March, 1831, the bill having been sworn to, &c. on the 17th.

At the return of the subpœna, *Barnard* answered the bill, admitting the agreement of the 9th October, 1824, and charged that the appellants had violated it, ruined him, and forced him to sue them at law; that they, after notice and full preparation, made a full defence at law in every respect, and that the verdict rendered was a fair and just one, and cannot be questioned in equity; that the property attached by *Heckrotte* was his son's, that his dealings with the appel-

lants were fair, and their accounts had been fully examined and adjusted before the jury.

After a general replication filed by the appellants, commissions were issued to take evidence, which is sufficiently adverted to in the opinion of the judge of the county court, who pronounced the final decree in this cause.

At April term, 1835, the county court, (T. BUCHANAN, A. J.) passed the following decree; after adverting to the pleadings, the judge proceeded as follows:

The commissions sued out to procure testimony, have all been returned with the proofs taken under them, and the object of the bill is to obtain a perpetual injunction against the verdict and judgment at law. The complainants in general allege, that *Barnard* is, and was their debtor at the time of the trial, and that they are injured by the recovery at law; he avers that he is not their debtor, that he was reduced to ruin by their improper conduct, in refusing to perform their part of the contract, and was compelled to have recourse to an action to recover some remuneration for the injury and losses *he* had sustained; that he is justly and honestly entitled to the verdict; and contends, that it cannot under the circumstances of the case be impeached in this court. This necessarily involves an investigation of the proceedings at law. It will be seen by recurring to a transcript of the record of the proceedings in that case, which has been exhibited and filed in this cause, that *Barnard*, on the 31st day of March, 1827, brought an action of *covenant* against the complainants in *Allegany* county court, upon the said agreement of the 9th of October, 1824, and recovered a verdict and judgment against them, as set forth in the bill, and admitted by the answer. The declaration in the case sets out the covenant, and protesting that he, *Barnard*, had faithfully performed all the covenants and stipulations on his part to be performed; specially avers that he sawed fifty thousand gun stocks, and had them ready ready and offered to deliver them to the defendants, the complainants in this court. The declaration then proceeds to assign, as specific breaches of the covenant

by the defendants, that they did not pay to said *Barnard* eight cents per stock for all the stocks sawed, as soon as there were one thousand or more sawed; that the defendants did not pay off the two notes to *Strider;* that they did not pay *Brandt's* unsettled account; that they did not apply any money in payment of their claims against the said *Barnard;* and that they did not pay over to him, *Barnard*, any money whatever, but wholly neglected and refused to fulfil their contract, to the damage of the said *Barnard*, in the sum of five thousand dollars. To this declaration, the defendants pleaded general performance, as will be seen by the plea; and afterwards, having obtained leave to amend their pleadings, they pleaded specially, that the said *Barnard* did not transfer to them all the gun stocks at the date of said contract, sawed at *Brandt's* mill, together with all the stocks then at *Western port*, and those at *Paddy town*, and also those at *William Ravenscraft's;* also, all the plank of walnut timber then at *Brandt's* mill; also, all the walnut logs and timber then in possession of, and owned by said *Barnard*, on or near the river either in *Virginia* or *Maryland*, contrary to the tenor of said covenant, and that the same being a condition, precedent to the performance of the covenant on their parts, they were not bound to perform their covenant. General replications were put into these pleas, and by an agreement signed by the counsel of the respective parties, all errors in the pleadings were released.

It must be conceded that all the pleadings were inartificially drawn; they were indeed very imperfect and defective, but notwithstanding this, it distinctly appears to the court, that the merits of the case were before the court and jury.

The plaintiff's claim was founded on the contract, and the declaration, though informal, gave the defendants full information of the nature and extent of the demand against them. The defendants' pleas show conclusively that they were, in fact, apprised of the claim made against them, but after a verdict and judgment below, and the affirmance of the judgment by the court of Errors, it is surely too late for either

party to the suit, to complain of technical informalities. Here the parties have entered into a contract, containing many stipulations, for the violation or breach of which, by the defendants, *Barnard* brought a suit to recover damages for the injuries he had sustained; the plaintiff could not go beyond the contract, but was limited and confined to it and to the specific breaches he had assigned. The defendants contended, that they had not broken their contract, but that the plaintiff had violated it by not transferring to them all the gun stocks, and other materials at *Brandt's* mill and elsewhere, pursuant to the contract, and which, constituted a condition to be performed by him before he could demand the execution of the contract on their part. The covenant was the foundation of the action, and the pleadings brought the merits of the claim and the defence before the court and jury.

It was admitted in the argument that the county court had jurisdiction of the case, and it is the opinion of this court, that the legal tribunal had exclusive cognizance of it, and that *Barnard* could not have had redress in equity for the injuries sustained by him. He claimed damages for the breach of a contract; it was a legal demand, proper to be adjusted at law, and had he sought redress in equity, his bill, upon the established principles of chancery, would have been dismissed; for that court will not, except in certain enumerated cases, entertain jurisdiction of a cause when the parties have a clear efficient legal remedy. It was urged in the argument, that the defendants' defence was not available at law, and even if it was, that this was a case proper for equity, as the legal tribunal could not, from the nature of its organization, adjudge a complicated matter of this kind, which would require investigations and calculations that no jury could make with any degree of correctness, however upright and intelligent they might be. There is some truth in this observation, but if it be admitted that the county court had jurisdiction, it follows, that the verdict and judgment ought to be conclusive on all other tribunals, otherwise, the consequence would be, that in no case would a recovery at law be a bar to relief

in equity. The question was, had the defendants violated their contract with the plaintiff? And if so, what injury or damage had he sustained? That the defendants might have availed themselves of any legal defence to the suit, cannot admit of doubt. The plaintiff in the suit at law, must have shown his title to recover, otherwise, he could not have obtained the verdict of the jury; on the other hand, the defendants had an ample opportunity of contesting the plaintiff's right or title to damages, by calling for proof that he had done all that was necessary to sustain the suit, or that they, the defendants, had performed the contract on their part; had the plaintiff failed to establish his title, the verdict must have been against him, or had the defendants succeeded in convincing the jury that they had fulfilled their part of the contract, the result would have been the same. After a verdict and judgment at law, the legal intendment or presumption is, that every thing was proved at the trial which was necessary to maintain the suit. If the defendants had an equitable and not a legal defence, what was it? It is not suggested in the bill nor proved by the evidence taken under the commissions, and even if it had been proved, the court could not judicially notice it, the complainants having omitted to charge it in the bill of complaint. Had the complainants any claims against *Barnard* which were not allowed or credited at the trial? The bill states that *Dilly* had paid on the contract one hundred and sixty dollars, sixty-two and a half cents, and that *Heckrotte* paid or advanced six hundred and sixty-nine dollars, thirty-six cents; as by exhibits A and B will appear; no other payment or advances are alleged, and the complainants do not state that their accounts A and B were not allowed by the jury on the trial. The defendant, however, avers in his answer, that such items of the account B, as the complainants were entitled to a credit for, were agreed upon and adjusted; and *James Murphy*, a witness, sworn under the commission to *John McHenry*, proves that *Dilly's* account for one hundred and sixty dollars, sixty-two and a half cents, was also allowed by the jury; and further, that the account B,

was allowed, under the commission to *Harper's Ferry*. *James Stubblefield* was examined as a witness, and he proves some acknowledgments of *Barnard*, that he owed *Heckrotte* eight hundred dollars. That is not charged in the bill, and therefore, cannot be judicially noticed; but *James Murphy* proves, that *Barnard* paid the said sum of eight hundred dollars to *Heckrotte*, and the receipt for the payment is exhibited and proved in evidence. But if none of these payments or credits were allowed or taken into consideration at the trial, whose fault was it? They were certainly known to the complainants, and if from neglect or inattention on their part, they were not claimed, however disastrous the consequences may be, they can form no ground of relief against a judgment at law. The complainants allege in their bill, that they could not have proved at law, a part of the advances made to *Barnard*, nor the understanding and agreement between them and *Barnard*, that they should retain the sums of money advanced by them on the contract, out of the first moneys arising from the sale of stocks, the same being confined to the knowledge of the defendant. Here is another instance of gross neglect on their part. If they really wanted such a disclosure of facts from *Barnard*, why not file a bill of discovery against him? The suit at law continued eighteen months before the trial took place. They had ample time and opportunity to obtain his answer, and must take the consequences of their own omission and negligence. It will be observed that *Barnard's* was a joint claim against *Dilly* and *Heckrotte*, founded on the agreement aforesaid. It could not be separated, and the defence of one was equally the defence of the other. They are identified in interest, and independently of the alleged agreement of *Barnard* with *Dilly* to release him from the judgment which will be made the subject of a distinct consideration. One has no superior equity to the other, and the court cannot discriminate between them; both or neither of them is entitled to the equitable interposition of this court; no fraud is imputed to the transaction. It may be, that the complainants omitted to procure evidence

necessary to their defence at the trial; and if so, their situation is to be regretted. But how does this case differ from any other judgment at law where the party has neglected his business; here, the court is called upon to review the proceedings at law, and relieve against the judgment, on the very grounds that were litigated and discussed before the jury, in a case too, where a court of equity has, in the judgment of this court, no original jurisdiction. On this branch of the subject, the court is of opinion, that the case presented, does not furnish the shadow of a ground for its equitable interposition.

Passing from this view of the subject, which has been exclusively restricted to the proceedings at law, to the allegations of the complainant, *Dilly*, that *Barnard* told him to make himself easy, that he had no expectation of recovering any thing from him; that he would not, if he could, compel payment from him; that he requested him, *Dilly*, not to make any preparation for the trial, alleging that his object in bringing the suit, was to compel *Heckrotte* to dismiss the attachment he had laid in the hands of *Stubblefield ;* and that confiding in these assurances of the said *Barnard*, he did not make the necessary preparations for the trial. How stands the matter? Are the facts charged admitted by the answer? *Barnard* admits in his answer, that he offered to compromise matters with *Dilly*, if he could only obtain justice; that on the morning of the day of the trial at law, he offered to compromise and settle with *Dilly* on terms of justice, at which time *Dilly* absolutely refused all offers and terms of compromise, and insisted upon the trial, leaving the defendant no alternative but to proceed with the trial of the cause. *Dilly* states, *Barnard* gave him absolute and unqualified assurances that he expected and would receive nothing from him, and requested him not to prepare for the trial, that his only object was to get at *Heckrotte*. *Barnard* states, that he offered to compromise matters with *Dilly* on terms of justice. *Dilly* avers in his bill that, confiding in the assurances given him by *Barnard*, he did not make the necessary preparation for the

trial. *Barnard* states, that on the morning of the day on which the cause was tried, he repeated the offer to compromise and settle with *Dilly* on terms of justice, when *Dilly* absolutely refused all terms of compromise, and insisted on the trial; so far then, from admitting, the answer virtually and substantially negatives the allegations of the bill. If there should be doubts on the point, it must be acknowledged by all, that the answer does not in fact, admit the charges in the bill.

It was contended in the argument, that the allegations of the bill not denied by the answer, are admitted, and authorities were adduced to sustain that position. The law upon this subject has fluctuated, but it is conceived that the rule has been completely established, at least in this state, that the charges or allegations in the bill, not admitted by the answer, must be proved. *Gill & John.* 510. 6 *Wheaton,* 472. The facts charged in the bill, not being admitted by the answer, are they proved by the evidence in the cause? All the witnesses concur in this. *Barnard* was reluctant to sue *Dilly,* and wished to fix his claim on *Heckrotte* alone, who, he alleges, had treated him ill, but that it being a demand against *Dilly* and *Heckrotte,* he was compelled to join the former in the action. Let us inquire what was the nature of the proposition or assurances made by *Barnard* to *Dilly.* Were they positive and absolute as alleged by the complainants, or qualified and conditional, as averred by the defendant? It will be seen at once, that this is a question of vital importance to the parties, and was so considered by them from the number of witnesses that were examined, and whose depositions have been returned with the commissions. *Henry Myers* and his wife, and the two *Porters,* John and Henry were examined on the part of the complainant; *McCulloh, Murphy, Bruce* and *Buskirk* for, and on the part of the defendant. The court has devoted to this part of the subject, particular attention; for notwithstanding the verdict at law, the court is not without apprehension that some injustice may have been done to the complainants, or more correctly speaking,

that *Barnard* may have obtained a verdict and judgment for more money than he was entitled to; not that any blame or censure is to be attributed to the jury, which was confessedly composed of intelligent and respectable men, and whose verdict, from the time consumed in the trial of the cause, must be considered as the result of the best judgment they could form on the facts and evidence before them; but the court is sensible from the nature of the case, that the discussion before the jury must necessarily have been perplexed and complicated, and how difficult it is in such cases, constituted as the courts are, to arrive at correct conclusions. The court felt the force of these considerations, and the necessity they imposed of scrutinizing the evidence taken under the commissions, and the result is, that the court is not satisfied of the truth of the facts alleged by *Dilly*, as the ground of his application for relief in this court.

There is some little confusion in the depositions of *John* and *Henry Porter*, but the court is convinced from the depositions of *Myers* and *wife*, and those of *McCulloh* and *Murphy*, that the only proposition or assurance made by *Barnard* to *Dilly* was, that he would not enforce his claim against *Dilly*, if he, *Dilly*, would remain neutral, making no defence to the action, and leave the controversy to be adjusted exclusively between *Barnard* and *Heckrotte*. Did *Dilly* withdraw from the defence of the suit or not? That he did not, but on the contrary, that he did in fact, take an active part in defending the suit, is abundantly and positively proved by the evidence of *McCulloh*, *Murphy*, *Bruce* and *Buskirk*. On the day of trial, it is positively proved, that he refused all offers of compromise by *Barnard*, and set him at defiance, and Mr. *Buskirk* proves, that he was employed by *Heckrotte* and *Dilly* to defend the suit, and *Dilly* paid him for his services. It may be asked on what ground, peculiar to himself, can *Dilly* claim the interposition of this court? He joined with *Heckrotte* in defending the suit, he broke the condition on which alone *Barnard* could be restrained from enforcing the judgment, and after taking the chances at law, he now applies to

this court as a court of equity for relief. The application cannot receive the countenance of the court.

It was urged in the argument, that the conduct of *Barnard* rendered *Dilly* indifferent to the issue of the proceeding at law, prevented him from preparing for his defence, and placed him under the protection of this court. This is answered by a reference to the evidence in the cause. The established principle in chancery is, that a party shall not be aided after a trial at law, unless he can impeach the justice of the verdict by facts, or on grounds of which, he could not have availed himself, or was prevented from doing it by fraud or accident, or the act of the opposite party, unmixed with negligence or fault on his part. 1 *John. ch.* 51. 3 *John. ch.* 356. Apply this rule to the case under consideration, and it is manifest from the facts, that the complainants have not brought themselves within any of its provisions. The bill seeks for a discovery of facts, and prays for an injunction against the judgment at law, and for such other redress as the nature of the case may require. The complainants might have had redress for any claim which they could establish against *Barnard,* unconnected with payments or advances made to him on the contract, and which were not before the jury on the trial. They have exhibited two claims marked A and B, but have failed to prove them, or either of them by any evidence in the cause, and even if they had been supported by proof, it is proved by *James Murphy,* that they were allowed by the jury; there is no ground, therefore, on which the court can afford them any relief.

*The complainants' bill is dismissed with costs.*

From which decree the said *Dilly* and *Heckrotte,* appealed to this court.

The cause was argued before BUCHANAN, Ch. J. and ARCHER, CHAMBERS, STEPHEN, and SPENCE, Judges.

R. JOHNSON, for the appellant, contended :

That the cause was too complex and involved, both as to

parties and accounts, for the comprehension of the jury, and therefore, properly the subject of a bill in chancery, even after a trial and verdict at law. *Pickett vs. Stewart, et al,* 1 *Randolph,* 479. *Hughes vs. Blake,* 6 *Wheat.* 459. 1 *Sch. & Lif.* 205.

And the counsel here went into an enumeration of all the inquiries of fact, which were necessarily submitted to the jury in the action at law upon the argument, and showed that they were sufficiently various and distinct to bring this cause within the decisions relied on by him. He insisted, that the main ground of relief, resulted from the representations of *Barnard* to *Dilly,* that he did not intend to charge him with the verdict, which constituted an exception to the general rule, as to the inviolability of verdicts and judgments. It would be against conscience, if prevented from availing himself of a defence at law by the plaintiff, the defendant should still be bound. *Marine Insurance Company of Alexandria vs. Hodgson,* 7 *Cranch,* 336. *Vaughan and wife vs. Wilson,* 4 *Hen. & Mun.* 453. *Poindexter vs. Waddy,* 6 *Mun.* 418. *Pickett, et al vs. Stewart et al,* 1 *Rand.* 479.

This case was, in truth, rather a question of fact than of law. If the misconduct imputed to *Barnard* exists, there can be no doubt about the law.

The actual want of preparation for trial, caused by defendant's representations, constitutes the fraud complained of. Before the trial, the appellants had not the opportunity of doing all they could have done, but for the promises of *Barnard ;* and notice of a different course on the morning of the trial, was too late to remedy the consequences of the previous assurances, unless the court believed that at the trial, the appellants were as ready as they would have been under different circumstances. There is a special equity in this cause. The evidence shows, that *Barnard* was fearful of the result, as respects both the defendants at law. The proposal that *Dilly* was to take no part, indicates that something was wrong. If the money was due under the contract, what difference if *Dilly* did take part. *Barnard* knew that the de-

fence rested in *Dilly's* hands, and had no right to prejudice *Heckrotte* by quieting *Dilly.*

MAYER, for the appellee.

The principle stated in *Gott and Wilson vs. Carr,* 6 *Gill & John.* 312, are like those relied on in 7 *Cranch,* upon proof of proper diligence, a party deprived of his defence at law, by fraud or accident, is entitled to relief in equity. *Lansing vs. Eddy,* 1 *John. Ch. Rep.* 51. *Smith vs. Lowry,* 323, *Smith vs. Brush,* 460.

The discretionary power of equity is narrowed down, in consequence of the power of courts of law to grant new trials; and where the loss of evidence goes only to a part of the damages, equity will not interfere, nor where the object is to show a witness perjured. The injury which authorizes equitable relief, must annul the whole cause of action. After judgment at law, the defendant cannot say his evidence was in the peculiar knowledge of the plaintiff. Where a party is not indebted *at all,* in such cases, false representations lulling to security, will be redressed in equity; and where two defendants are liable for each other, no evidence affecting one, putting him off his guard, can avail the other. The proof here is, there was a debt due, and as *Heckrotte* was certainly liable, the judgment cannot be enjoined. But the fact is denied, and here the council examined the proof. He contended, the cause was not to be tried again. The cause was settled, except on equitable circumstances, and these could not be founded upon the indulgence proffered by *Barnard.* There is no complexity in the cause, and no proof of imputed ignorance in the jurors. It is the interest of the republic, that there should be an end to litigation, and this rule it is better to observe, than to find reasons for interference, in the ignorance of juries or the tricks of dishonest plaintiffs. Equity does not interfere upon fancied grounds of honour, to correct the supposed errors of inconsiderate jurors or the designs of crafty plaintiffs; yet, while this is asserted, we

meet this case upon the glowing facts of its merits. Perfect justice cannot be done in every case. 1 *Sch. & Lif.* 205.

STEPHEN, Judge, delivered the opinion of the court.

The appellants in this case, filed their bill to be relieved against a judgment rendered on the common law side of *Allegany* county court, on the ground of its being contrary to equity, and obtained *mala fide* and by surprise. The principles upon which courts of equity grant relief in such cases, have been frequently the subject of decision by that tribunal, not only in *England*, and in our sister states, but have also been authoritatively settled by this court.

The merits of this case, therefore, as was correctly observed in the argument, resolve themselves more into a question of fact than a question of law. In 6 *Gill & John.* 312, this court, in adverting to the doctrine of courts of equity upon the subject of administering relief against judgments at law, after stating the general principle, say : " that every person is bound to take care of, and protect his own rights and interests, and to vindicate them in due season, and in the proper place," and then lay down the following well established general rule : " that a court of equity will not relieve against a recovery in a trial at law, unless the justice of the verdict can be impeached by facts, or on grounds of which, the parties seeking the aid of chancery, could not have availed himself at law, or was prevented from doing it by fraud or accident, or the act of the opposite party, unmixed with any negligence or fault on his own part." The rule here laid down, is wise, salutary and politic, and has received the sanction, not only of the *English* courts of equity, but of the highest judicial tribunal in this union. *Marine Insurance Company of Alexandria vs. Hodgson*, 7 *Cranch*, 332. There chief justice *Marshall*, in delivering the opinion of the court, says : " without attempting to draw any precise line to which courts of equity will advance, and which they cannot pass, in restraining parties from availing themselves of judgments obtained at law, it may safely be said, that any fact which

clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery. On the other hand, it may with equal safety be laid down as a general rule, that a defence cannot be set up in equity which has been fully and fairly tried at law, although it may be the opinion of that court, that the defence ought to have been sustained at law." The cause of action upon which the judgment was obtained in this case, which is sought to be relieved against, was one, properly and generally speaking, exclusively cognizable in a court of law, and not a fit subject for the exercise of equitable jurisdiction, and to bring it within the proper and legitimate cognizance of a court of equity, it is incumbent upon the party seeking redress in that forum, to state the grounds upon which he was unable to defend himself at law.

The title of the complainant to the assistance of a court of equity in such a case, must be exposed by the pleadings, and the ground principally relied upon in this case, is the want of preparation to try the cause upon its merits, arising from the false promises and fraudulent conduct of the defendant. That a judgment obtained *mala fide* and by surprise, arising from the fraudulent and deceptive conduct of the adverse party, by which the complainant has been lulled into a security fatal to his rights, would be against conscience, and ought to be enjoined by the remedial powers of a court of equity, is a clear and self-evident proposition, about which, in a court of conscience at least, no doubt, we think, can or ought to be entertained; and if such was the character of this case, the appellants would unquestionably be entitled to the relief which they seek to obtain. But we think, that the proofs in the cause fully demonstrate that they have no such standing in this court, and that if injustice has been done upon the trial at law, it was under circumstances, which will not warrant the interference of a court of equity.

It is an established principle, that to enlist the countenance of such a court in his favour, a party must always enter its doors with clean hands; and when he seeks to be relieved against injustice, arising from the bad faith of his adversary, he ought not to be obnoxious to the same imputation himself. It is one of the maxims to be found in *Kaine's* principles of equity, collected by *Fonblanque*, at the end of his treatise on equity, " that no man is entitled to the aid of a court of equity when that aid becomes necessary by his own fault." The application of such a principle to this case, we think, decisive of the merits of this controversy. The proof in the cause, shows beyond doubt, that the promise of the appellee to *Dilly*, one of the appellants, was not absolute, but conditional in its character. It was, that if he would take no part in, but would entirely withdraw from the defence of the action instituted against himself and *Heckrotte*, that he, *Dilly*, should be released from all responsibility to pay the judgment, which might be obtained against them. The offer or proposition then, being conditional in its nature, to obtain the benefit of it, it was incumbent upon *Dilly* not only to prove that he acceded to it, but that the terms it contained have been honestly and faithfully performed on his part. This would seem to be not only the requirement of law and justice, but the dictates of common sense. *Dilly*, one of the appellants in this case, as his ground of equity states, that relying upon the representations of the appellee, he did not make the necessary preparations for the trial of the cause, and the proofs necessary to a fair investigation of the matters in controversy were not had at the time of the trial.

It is to be observed, as was remarked by *Chancellor Kent* in 1 *John. Ch. Rep.* 322, where a want of preparation at law was charged as a ground of equity, that it *does not* appear that any application was made on his part to postpone the trial; on the contrary, it appears in proof, that during the trial term, and shortly before the jury was empannelled, he not only rejected overtures for a compromise or accommodation, made on the part of his adversary, but enlisted counsel in

his defence, and threw down the gauntlet of defiance to his opponent. It further appears, that witnesses were summoned and examined upon the trial, either by *Dilly* or his co-defendant *Heckrotte*, and if it may not fairly be inferred from the proofs and proceedings in the cause, (which opinion we are inclined to adopt,) that *Dilly* voluntarily waived any advantage which he could have derived from the offers or propositions of *Barnard*, yet, the answer in this case shows, that he made a full defence, and being responsive to the bill, and not rebutted or disproved by testimony, is evidence of that fact for the defendant, and that too, even where the equity of the complainant is grounded, as in this case, upon the allegation of fraud, 7 *Cranch*, 69, This fact, that the defence was a complete one, and that the cause was fully tried upon its merits is also an answer to that part of the complainants' equity, which is founded upon the complexity of the case, and his inability to make his defence in a court of law. It is further to be observed, that as to the complexity of the case, and the difficulty of defending themselves at law, they have not made that fact an allegation in their bill, and that they should have done so, appears to have been necessary. See *Wyatt's Prac. Reg.* 232, where he says, " when it is prayed to stay proceedings, it is commonly upon some matter suggested in the bill, as that the complainant is not able for some reasons shown, to make his defence in the other court, though he hath a good discharge here in equity ; that the other party has a penalty on him which he proceeds for at law, and threatens to make the complainant pay, or that the other court has not jurisdiction of the cause, but it is cognizable here, or that the other court refuses him some rightful advantage, or does injustice to him in the proceedings, or has not power to do him right : *et similia*." To the same effect, see 1 *Maddox Chan.* 1089. The principle upon which chancery interferes in such cases, is laid down in the following terms by Lord *Redesdale*, in 1 *Sch. & Lef.* 205. " The inattention of parties in a court of law, can scarcely be made a subject for the interference of a court of equity ; there

may be cases cognizable at law, and also in equity, and of which, cognizance cannot be effectually taken at law, and therefore, equity does sometimes interfere, as in cases of complicated accounts, where the party has not made defence, because it was impossible for him to do it effectually at law." Even, therefore, in cases where the court of equity has concurrent jurisdiction with a court of law, as in matters of account, it seems that equity will not relieve on the mere ground of the difficulty of the defence in a court of law; but it must be a case where it is impossible for the party to make an effectual defence before that jurisdiction. In the case now before this court, no such allegation is either made or proved, and in the language of the distinguished chancellor, whose opinion has just been referred to, we think it unconscientious and vexatious to bring into a court of equity, a discussion which might have been had at law. As to the facts which are charged in the bill, to have rested exclusively in the knowledge of the defendant, and the exhibition of which, were essential to a fair and just decision at law; it is only necessary further to remark, that after a verdict at law, the party who complains of it, comes too late with a bill of discovery. 1 *Vernon*, 176–7. So in 1 *John. Chan. Rep.* 51. Chancellor *Kent* refers to a decision of Lord *Hardwicke*, where he says, it must appear that the defendant was ignorant at the time of the trial, of the fact, which renders the verdict at law contrary to equity, and even then, chancery will not relieve, where the defendant submits to try it at law first, when he might by a bill of discovery, have come at the fact, by the plaintiff's answer, before the trial at law; and the complainants in this case, had ample time to file such a bill, because it appears at the trial term, they applied for, and had leave to amend their pleadings, and the cause was continued to the next court. We do not, therefore, think that the complainants or either of them, were entitled to the equitable interposition of a court of chancery in their favour; and we are therefore of opinion, that the decree of the court below was correct, and ought to be affirmed.

DECREE AFFIRMED.