John J. Briesch *vs.* Thomas McCauley, William Kreps, and Benjamin Palmer and wife.—*December* 1848.

A judgment at law was enjoined by an injunction founded upon the allegation of the bill, that the complainant was the holder of a single bill, which he was entitled to set off against the claim upon which the judgment was recovered. One of the defendants, in his answer, admitted the execution of this single bill, the others state that they had no knowledge of its existence. No proof was offered upon this point, and the injunction was dissolved and the bill dismissed upon *final hearing.* Held:

That in this condition of the cause, it was incumbent on the complainant to sustain, by proof, the material allegations of his bill. He could not rely upon the silence of the defendants.

Briesch vs. McCauley.—1848.

If the answer neither admits nor denies the allegations of the bill, they must be proved upon the final hearing. Upon a motion for dissolution, they are to be taken as true.

It is an established principle of evidence, that the answer of one defendant cannot be read in evidence against his co-defendant.

Any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will justify an application to a court of equity.

But a defence cannot be set up in equity which has been fully and fairly tried at law, although it may be the opinion of the court that the defence ought to have been sustained at law.

The allegation that the judgment was obtained by fraud, was denied by the answer, and not established by proof. The bill contained no allegation, that the complainant was defeated at law by accident or surprise; nor does it aver that the proof he now offers upon the question there decided, came to his knowledge after the trial at law. HELD:

That under such circumstances, a court of law would have refused to grant a new trial, and there is certainly no ground for claiming the interposition of a court of equity.

APPEAL from the Equity Side of *Washington* county court.

On the 14th of May 1838, *John J. Briesch*, the appellant, filed his bill on the equity side of *Washington* county court, charging, that on the 25th of June 1827, he executed a single bill, payable to a certain *Ann Maria Kreps*, the wife of a certain *William Kreps*, for $200, loaned him by said *William Kreps*. That at the time of the execution and delivery thereof, it was understood, and so expressed by your orator and said *William*, that said single bill was payable to the said *Ann Maria Kreps*, wife of the said *William*, and with that understanding was delivered to him, and your orator then verily believed, that the christened name of the wife of said *William*, was the same as that mentioned in the said single bill. That afterwards, on the 13th of May 1833, the said *William Kreps* executed and delivered to your orator a single bill, payable in ten days, for the sum of $285.08. That your orator believed when he obtained this last bill, that it would be good and available as a set-off against the first, in case a suit should be brought thereon against your orator, in the name of the said *William Kreps*, and *Ann Maria Kreps*, his wife, during the

lifetime of the said *Ann Maria*, or by the said *William*, in the event of the decease of his said wife in his lifetime. That said *Ann Maria Kreps*, after the execution of said last mentioned single bill, transferred the first to one *William McCauley*, of *Franklin* county, in the State of *Pennsylvania*, and afterwards departed this life. That subsequent to this event, on the 23rd day of February 1836, suit was instituted in the name of *Ann Maria Kreps*, for the use of *Thomas McCauley*, against your orator, on said first mentioned single bill, upon which there was an issue, trial, verdict and judgment for the plaintiff, for $200 debt, and $117 damages and costs. That your orator pleaded in abatement of said suit, that the plaintiff mentioned in the writ, had deceased before the impetration of the same, and the issue was joined, and the verdict was on said plea, but owing to the rigid rules of the common law, he was unable to prove that said single bill was given to the said *Ann Maria Kreps*, wife of *William Kreps*.

The bill further charges, that the said *McCauley* and *William Kreps* fraudulently combined, with a view to deprive your orator of the benefit of using the last mentioned single bill as a set-off against the first, and that the verdict was founded upon the testimony of said *William Kreps*, who testified, that the first mentioned single bill was given to *Ann Maria Kreps*, the *daughter* of said *William*, and not to *Ann Maria Kreps*, *his wife*. That *McCauley* obtained possession of the same from *Ann Maria*, the wife of said *William*, and has no right thereto, except from her. That said *William* expects to receive a part of the proceeds of the said judgment; and your orator expressly charges, that the name of the said *Ann Maria*, daughter of said *William*, has been used by *McCauley* and *Kreps* fraudulently, to deprive your orator of using the last mentioned bill as a set-off to the first. That *McCauley* has issued execution on said judgment, which has been levied upon the property of your orator. The bill then prays for an injunction restraining execution of said judgment, and for general relief. The court ordered the injunction as prayed.

The *answer* of *McCauley* avers the execution by *Briesch* of a single bill, in favor of a certain *Ann Maria Kreps*, dated

25th of June 1827, for $200, payable on the 1st of April 1828, on which an action was brought and judgment obtained, as stated in the bill. Respondent has been informed and believes, and so charges, that *Briesch* executed said single bill in favor of *Ann Maria Kreps*, who was the daughter and not the wife of said *William*, and denies that the same was executed to or in favor of the wife of said *Kreps*. He denies that it was transferred to him by the wife of the said *William*, but alleges, that *Kreps* being indebted to him, transferred said single bill to him, with authority to collect the same, and, out of the proceeds, to retain a sufficient sum to pay his debt, and to hold the balance for the use of the said *Ann Maria*, and the other children of said *Kreps*. Respondent has no personal knowledge of the execution of the other single bill mentioned in the bill of complaint, alleged to have been executed by *William Kreps* to *Briesch*, in May 1833, for $285.08. Respondent expressly denies, that he and the said *William Kreps* fraudulently combined, with a view to deprive said *Briesch* of using the last mentioned single bill as a set-off to the first, as charged in the bill, or that the name of *Ann Maria Kreps*, the daughter, was fraudulently used by them, with a view to deprive the complainant of so using said last mentioned single bill, and denies all manner of unlawful combination charged against him in the bill. The answer also sets forth, by way of *plea*, that the complainant had the same means of defence in the suit at law which he now rests his case on in this court, and that he suffered a recovery against him, by neglecting to use them, and that the verdict and judgment are not impeached in the bill, by facts or on grounds, of which the complainant could not have availed himself in the trial at law, nor was he prevented from so doing, by fraud or accident, or the acts of the opposite party, and that he does not seek any relief which the court of law, in which the judgment was recovered, was not fully adequate to render.

The *answer of William Kreps* avers, that *Briesch* executed to *Ann Maria Kreps*, the daughter of respondent, the first mentioned single bill, at the time and for the sum stated in the bill of complaint, and expressly denies that it was executed in

favor of his wife, or that his wife was named *Ann Maria Kreps*, but that it was made in favor of his daughter, and so understood by respondent and *Briesch* at the time the same was executed. Respondent admits that he did, in May 1833, execute in favor of said *Briesch* a single bill, for the sum of $285.08, as set forth in the complaint. Respondent's wife died in 1835. He denies that his wife ever transferred said single bill to *McCauley* as charged, but that respondent, with the assent of his said daughter, whom he had maintained and educated, and who was indebted to him therefor, transferred the same to *McCauley*, in satisfaction of a debt due him by respondent, with the understanding that he should collect the amount due, and, after retaining sufficient to pay his claim, to hold the balance of the proceeds for the use of the said *Ann Maria*, or such other person as might be entitled to the same. Respondent admits, that he testified in the suit at law, that his wife was not named *Ann Maria Kreps*, but *Polly Kreps;* and that said single bill was not given to his wife, but in the name and for the use of his daughter, *Ann Maria Kreps*. In other respects, this answer contains the same denial of fraud and fraudulent combination, and relies upon the same defences, as the answer of *McCauley.*

The *answer of Benjamin Palmer*, and *Ann Maria*, his wife, (formerly *Ann Maria Kreps*,) alleges, that *Briesch* did execute the single bill in question in favor of the respondent, *Ann Maria*, for the sum and at the time stated in the bill of complaint. That respondent was a minor at that time, and is the daughter of *William Kreps*, was supported and maintained by him from infancy until her mother's death, in 1835. That her father obtained said note from *Briesch*, and had it drawn payable to *respondent*, and not to her mother, the wife of said *William Kreps*. That the name of her said mother at the time said note was executed, was *Polly Kreps*. The answer then states the transfer of the note to *McCauley*, with assent of respondent, as stated in *Kreps' answer*. Respondent has no knowledge of the note of $285.08, alleged in the bill to have been executed by said *William Kreps* to said *Briesch*, in *May* 1833. In other particulars this answer is similar, so far

25      v.7

as the knowledge of respondent extends, to those of *Kreps* and *McCauley*, and relies upon the same defences as are therein contained.

A commission was then issued to take testimony, under which a mass of evidence was taken, which it is unnecessary to state, the effect thereof being sufficiently stated in the opinion of the court.

The cause being then submitted, the court below passed the following decree:

"The above cause being submitted to the court on final hearing, and the bill, answers and evidence in the cause having been by the court read and considered, it is thereupon, this 1st day of April 1847, by the court, ordered, adjudged and decreed, that the injunction heretofore granted in said cause, be, and the same is hereby dissolved, and that the bill of complaint in this cause be, and the same is hereby dismissed with costs."

From this decree the complainant appealed to this court.

The cause was argued before SPENCE, MARTIN and FRICK, J.

By PRICE and TIDBALL for the appellant, and
By ROMAN for the appellee.

MARTIN, J., delivered the opinion of this court.

There are to be found in the bill filed in this case, three allegations, which, if true, would have entitled the complainant to the protection of a court of equity. They are—

1. That the single bill of the 27th of July 1827, was executed by the complainant in favor of the wife of *William Kreps*, and that upon her death it devolved upon her husband.

2. That the complainant was the holder of the single bill of the 13th of May 1833, drawn in his favor by the said *William Kreps*, and which he had, therefore, the right to set off against the first mentioned note. And—

3. That the institution of the action in the name of the daughter of *William Kreps*, and the judgment consequent thereon, was the result of a fraudulent contrivance concocted between *Thomas McCauley*, to whom the single bill of the

27th of July, had been assigned, and *Kreps*, for the purpose of preventing the complainant from using one note as a defence against the other.

These facts, collectively considered, certainly presented a strong case for the application of the conservative powers of a chancery court, and they were, no doubt, the allegations by which the learned judge was influenced in granting the injunction.

But the aspect of the case is entirely changed by the answers, which are exhibited in this record.

It will be seen that the defendants positively and distinctly deny the allegation of combination and fraud. There is an entire absence of any evidence, calculated to overcome these responsible averments in the answers with respect to the charge of fraud; and it is manifest, that the injunction must have been dissolved upon this negation of the imputed fraud.

But there is another objection to the relief sought by the complainant, that cannot be overcome.

An examination of the bill will show, that the claim of the complainant to the interposition of the court, stands upon the allegation, that he was the holder and proprietor of a single bill of the 13th of May 1833, executed in his favor by *William Kreps*, which, in law, he was authorized to set off against the note upon which the suit in controversy was instituted. This fact lies at the foundation of his case; and the counsel for the appellee has contended, that this allegation has not been proved, and that the cause is to be treated, as if this single bill had no existence.

Has this averment been proved? We think not.

The existence of this single bill is not admitted by the answers of *Thomas McCauley*, or of *Anne Maria Palmer*.

*McCauley* in his answer says:—"He has no personal knowledge of the execution of the other single bill mentioned in the complainant's bill of complaint, and alleged to have been executed by the said *William Kreps*, to the said complainant, for the sum of $285.08."

The answer of *Ann Maria Kreps* is to the same effect.

In this case the injunction was dissolved, and the bill dismissed on *final hearing;* the bill, answers and evidence being before the court. In this condition of the cause, it was incumbent on the complainant to sustain, by proof, the material allegations of his bill. He could not rely upon the silence of the defendants. This is the doctrine of *Warfield vs. Gambrill,* 1 *G. & J.,* 503. In *Young vs. Grundy,* 6 *Cranch,* 51, it was held:

"That, if the answer neither admits nor denies the allegations of the bill, they must be proved upon the final hearing; upon a question of dissolution of an injunction, they are to be taken as true."

How then is the existence of the single bill in question attempted to be established?

Only by the answer of *William Kreps,* who admits the execution of the note, as stated in the bill. But it is an established principle of evidence, that the answer of one defendant cannot be received in evidence against his co-defendant. If the complainant desires to prove a fact, by the evidence of a co-defendant, he may examine him as a witness on interrogatories, and thus afford his adversary an opportunity to cross-examine him. *Stewart vs. Stone,* 3 *G. & J.,* 510.

Upon this ground, therefore, the court below could not do otherwise than dismiss the bill.

The appellant has failed, in other respects, to present a proper case for the interposition of a court of equity.

The question, as to whom the single bill of the 27th July 1827, was given, was tried at law, upon a plea in abatement interposed by the complainant. The jury found the plea to be false, and a final judgment was rendered for the plaintiff, as the legal consequence of the verdict.

We have seen that the allegation, that this judgment was obtained by fraud, was negatived by the answers, and has not been established by testimony. It is neither alleged nor proved, that the appellant was defeated in the trial at law, by accident or surprise, of which he was not aware, and against which he could not, by skill and diligence, have protected himself. A large mass of testimony is exhibited in the record, on the point

that was involved in the controversy at law, but it is cumulative in its character, and it is not even averred, that it had reached the knowledge of the complainant since the trial. Under such circumstances, a court of law would have refused to grant a new trial. There certainly is no ground for claiming the interposition of the chancery tribunal.

In the case of the *Marine Insurance Company vs. Hodgson*, 7 *Cranch*, 336, the Supreme Court declared:

"Without attempting to draw any precise line to which courts of equity will advance, and which they cannot pass, in restraining parties from availing themselves of judgments obtained at law, it may be safely said, that any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself, or his agents, will justify an application to a court of equity. On the other hand it may with equal safety be laid down as a general rule, that a defence cannot be set up in equity, which has been fully and fairly tried at law, although it may be the opinion of the court, that the defence ought to have been sustained at law." The same principle is recognised and announced in *Barker vs. Elkins*, 1 *Johns. Ch. Rep.*, 466; *Gott vs. Carr*, 6 *G. & J.*, 309; and *Dilly vs. Barnard*, 8 *G. & J.*, 170.

For these reasons, we think, the decree of the county court must be affirmed, but express no opinion on the question of fact raised by the record.

DECREE AFFIRMED.