Crowe *vs.* Wilson.

(Decided 23rd June, 1886.)

JOHN CROWE *vs.* ACHSAH WILSON.

*Lessor and Lessee—Perpetual lease—Waste—Injunction—Equity Practice—Final hearing on Bill and Answer.*

Equity will restrain a tenant under a lease for perpetual renewal, from tearing down and removing a dwelling-house from the demised premises, if it be made to appear that such removal would greatly impair and endanger the security for the rent reserved; but so long as the rent is not rendered insecure thereby, the right of the tenant to take down and build up, alter, remodel and reconstruct at his own pleasure, ought not to be interfered with.

When a motion for the dissolution of an injunction is heard on bill and answer, all the allegations of the bill, which are not denied by the answer, are taken to be true; but if the final hearing of a case is on bill and answer, the answer is to be considered as true in regard to all matters which are susceptible of proof by legitimate evidence; and if any material matter charged in the bill of complaint has been neither denied nor admitted by the answer, it stands for naught.

APPEAL from the Circuit Court of Baltimore City.

The appeal in this case was taken from a decree of the Court below making perpetual an injunction previously issued, restraining the appellant from tearing down the building erected upon the lot in the proceedings mentioned. The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, IRVING, RITCHIE, and BRYAN, J.

*Fielder C. Slingluff*, for the appellant.

*N. P. Bond*, and *Robert D. Morrison*, for the appellee.

BRYAN, J., delivered the opinion of the Court.

The appellant is possessed of a leasehold interest in a lot of ground in the City of Baltimore, which by the terms of the original lease was demised for ninety-nine years, with a covenant for perpetual renewal. The appellee is seized of the reversion in fee. A bill in equity was filed by the appellee to restrain the appellant from tearing down and removing from the lot a certain dwelling-house which had been erected thereon; and it was alleged in the bill of complaint that if the dwelling-house should be torn down and removed, the reversioner's security for the rent reserved on the lease would be greatly and irreparably impaired. We prefer to consider the general question of the rights of the parties to this lease, without at present adverting to the structure of the pleadings. By the common law a lease for any number of years is merely a chattel interest, and is inferior in legal contemplation to an estate for life. In England, many leases have been made for a thousand years; but they stand on the same footing as leases for one year. The lessees have no freehold in the land and are described in legal language as

possessed not of the land, but of the term of years. Many important consequences follow from this principle.

The present inquiry does not make it necessary to mention them in detail. It suffices to say that the commission of waste by tenant for years involved the forfeiture of his estate, according to the express provisions of the Statute of Gloucester. And waste is defined to be "spoil or destruction in houses, gardens, trees or other corporeal hereditaments, to the disherison of him that hath the remainder or reversion in fee-simple or fee-tail." If such a doctrine should be rigidly applied to the present case, it would follow that the destruction of the house in question would forfeit the estate of the appellant. The doctrines of the common law, however, require considerable modification when they are applied to social, domestic and political conditions different from those which prevail in the country of its origin. And their inherent wisdom is strikingly manifested in the case and flexibility with which they were adapted to new and altered circumstances. The law of waste, as understood in England, would have made it impossible for tenants to cultivate the wild lands of this country. It is also inapplicable to the renewable leases in the City of Baltimore. It is a part of the public history of the State, that a very large portion of the real estate in this city is held subject to these leases. In a vast number of instances, the rent reserved bears a very small proportion to the annual value of the land. In a considerable number, it is only "one cent payable if demanded." The rights of the reversioner depend on fixed principles of law, and are in no way modified by the amount of the rent reserved. If the reversioner can enforce a forfeiture of the lease for waste where the rent is a thousand dollars, it must be no less his right to do so, where it is one cent. The lessee has a right according to the terms of the covenant for perpetual renewal to make his interest endure forever. It is totally inconsistent with

this right to suppose that he has not the absolute control and management of the property. And such has always been the understanding. It may be considered as the local common law of the City of Baltimore, founded on a fixed uniform invariable usage reaching back much longer than a century. The covenant of the reversioner is, that the tenant and his representatives may hold, occupy and enjoy the land throughout all future time, provided they pay the stipulated rent. If they continue to pay the rent and elect to hold the premises by renewals of the lease, the reversioner can never, under any circumstances, obtain possession of the demised premises. It would be utterly and entirely inconsistent with the covenanted rights of the parties, to hold that he could interfere with the management of the property by the tenant in any way which his interest or wishes might suggest. By the common law, it is waste and a forfeiture of the lease when a tenant converts one species of edifice into another, even though its value is improved. The application of such a doctrine to the perpetual leases of the City of Baltimore, would shock and startle the profession, and would do immeasurable injustice. The forms usually adopted for these leases secure the rights of the reversioner. In the present case, the lease following the ordinary course stipulates for the right of distraint for rent in arrear; and if any part of the rent shall be sixty days in arrear, for the right to re-enter and hold the property until all arrearages are paid; and if the rent is in arrear for six months, for the right to re-enter and annul the lease. In certain contingencies, not unlikely to occur, the reversioner may find it requisite to repossess the premises demised. It is sufficiently obvious that his security for his rent is much enhanced by valuable buildings erected upon them; and that this security would be impaired by the destruction of them. Justice, of course, requires that no impediments should be placed in the way of the collection of his rent.

Anything which tends to defeat it, or to render it more difficult or uncertain, operates to such extent, to work him injustice. We may find some analogies to the present case, in the practice of Courts of equity in regard to what is called equitable waste, which is defined to be such acts as work manifest injury to the inheritance, although they are not inconsistent with the legal rights of the party who commits them. Among the instances given are such as these: Where a mortgagor in possession fells timber on the estate and thereby renders the security insufficient; and where a tenant for life, without impeachment of waste, pulls down houses, or does other waste wantonly and maliciously; and where tenants for life without impeachment of waste, or tenants in tail, after possibility of issue extinct, commit acts in destruction of the estate, or cut down trees planted for the ornament and shelter of the premises. These cases are mentioned in *Story's Equity Jurisprudence, section* 915. It will be observed, that the acts enumerated are within the legal competency of the party who does them. But most of the acts which a Court of equity will enjoin might be committed at law with impunity; and this is usually the ground for equitable interposition. The learned jurist states, that the party doing the acts described is deemed guilty of a wanton and unconscientious abuse of his rights, ruinous to the interests of other persons, and is for this reason restrained in equity. We do not know that a clearer example of equitable waste could be found, than the case which the appellee has stated in the bill of complaint.

The Court below granted the injunction prayed in the bill. An answer was filed, and the cause was set down for final hearing on bill and answer; no motion having been made to dissolve the injunction.

When a motion for the dissolution of an injunction is heard on bill and answer, all the allegations of the bill, which are not denied by the answer, are taken to be true.

This is as well settled as any rule of practice can be. But the rule is different if the final hearing is on bill and answer. In such case, the answer is to be considered as true in regard to all matters which are susceptible of proof by legitimate evidence; and if any material matter charged in the bill of complaint, has been neither denied nor admitted by the answer, it stands for naught. *Warfield vs. Gambrill,* 1 *G. & J.,* 503; *Dugan vs. Gittings,* 3 *Gill,* 138; *Briesch vs. McCauley,* 7 *Gill,* 189; *Warren vs. Twilley,* 10 *Md.,* 39. Taking the answer as true in all its statements of fact, as we are bound to do, we find that it clearly appears that the appellant intended to remove the building on the leased premises, and that this removal would greatly impair and endanger the security for the rent reserved. We think therefore, that the Court below was correct in its decree making the injunction perpetual.

It will be seen that the right to interfere with the tenant in the management and control of his own property, exists only under circumstances which would justify the exercise of the preventive jurisdiction of a Court of equity. We do not think that it is just for him to exercise his legal rights in such manner as to render the reversioner's rent insecure. But as long as this is secured, his power ought not to be questioned to take down and build up, alter, remodel and reconstruct at his own pleasure.

*Decree affirmed,*
*with costs.*

(Decided 23rd June, 1886.)