## WARFIELD *vs.* GAMBRILL.—*December,* 1829.

To obtain a partition of land in equity, the complainant must allege and establish a seisin in himself.

To a bill praying for a partition of lands, alleging a seisin in the complainant with others, the defendant in his answer did not respond to the averment of seisin: the cause being set down for hearing upon bill and answer, the silence of the defendant is no admission of that fact, and the complainant having taken no proof of it, his bill was dismissed.

A respondent submitting to answer must answer fully, but if the answer be defective and insufficient to meet the allegations and interrogatories of the bill, the complainant desiring a fuller response must except to the answer; if he do not, he cannot rely upon the silence of the respondent, in relation to any material allegation, but must prove it.

Where G by his last will devised certain tracts of land to his three sons in fee, and also devised to his daughters, "the right, privilege and liberty of residing and living in the houses with, and using and cultivating with themselves and their negroes, and of keeping their negroes, stock, and all their other property thereon, and with them, in common with my sons, all my lands during the term that my said daughters should remain single and unmarried," it was held that the daughters did not take an estate for life, or any other less estate, in common with their brothers, which was susceptible of partition; and that the devise to them was a mere charge for their benefit upon the lands of the testator, and incapable of alienation to a stranger.                    PER BLAND CHANCELLOR.

APPEAL from a decree of the Court of Chancery dismissing the bill of the complainant (now appellant.)

The bill filed on the 26th December, 1825, stated that the complainant, *Launcelot Warfield* was seized in fee of seven eighths of two tracts of land in *Anne Arundel* county, called "*Friendship*" and "*What you please,*" with remainder in fee of the other one-eighth on the death of the defendant *Lydia Gambrill*, who was entitled as tenant in common, with complainant during her natural life to one undivided *eighth* part.    That the said *Lydia* was then in the possession of the whole, and prayed that a decree might pass for a partition of the same according to the rights of the parties.

The answer of *Lydia Gambrill* states that her father *Augustine Gambrill* died in the year 1790, leaving three sons and five daughters.    That to two of his sons together with his daughters he left his dwelling plantation as tenants in common, and that they all to wit, *Richard* and *Augustine* the sons, and the five daughters held, and cultivated the same as such, until three of the daughters married, when this defendant, and the remaining sister believed they were entitled to one half of said plantation so long as they remained single.    That in the year 1807, *Richard*, sold his interest to his brother *Augustine*, who as they believe was previously entitled to one fourth.    The answer further states, that *Susannah* the only unmarried sister of the defendant died in the year 1824, and she submits to such decree as the Chancellor upon consideration of her fathers will may deem it just to pass.

The will of *Augustine Gambrill* referred to in the answer, contains the following clauses.

"I give and devise unto my sons *Richard Gambrill*, and *Augustine Gambrill*, and their heirs equally to be divided between them, my dwelling plantation, being parts of the tracts of land, called "*Friendship*," and "*What you please.*"    Item "I give and devise to my son *William Gambrill*, and his heirs forever, all my undivided part of the tract of land called "*Young's Success.*" Item "I give and devise to my daughters *Lydia, Susannah, Elizabeth, Margaret* and *Sarah Gambrill*, the right, privilege,

and liberty of residing and living in the houses with, and using and cultivating with themselves, and their negroes, and of keeping their negroes, stock, and all their other property thereon, and with them, in common with my sons *Richard Gambrill*, *Augustine Gambrill*, and *William Gambrill*, all my lands during the time that my said daughters shall remain single and unmarried."

BLAND, Chancellor at July term, 1826, passed an interlocutory decree for a partition, and ordered a commission in the usual form according to the act of Assembly, to divide the land in the proceedings mentioned, which commission accordingly issued, and was returned with a plat annexed, designating the manner in which the division had been made.

Afterwards at September term, 1826, the following decree was passed by

BLAND, Chancellor. This case standing ready for hearing, and the notes of the complainant's solicitor having been read, and the argument of the defendants solicitor having been heard, the proceedings were read and considered.

This case was submitted at the last July term without argument, or notes, or any opposition by counsel, and the interlocutory decree was accordingly signed by the Chancellor, under an apprehension, not only that a partition might be made, but that it was in reality the wish of the parties. The answer of the defendant is badly and obscurely drawn and expressed, in so much so, that even the defendant's present solicitor seemed by the course of his argument to be under an impression, that it had admitted a partition might be decreed. But it appears on a more careful consideration of the answer, that the defendant meant to state facts, and to assert, not to yield up, any of her claims, or pretensions, in any manner whatever. And in substance she has claimed all that the will of her father entitles her to, either at law or in equity. The whole case therefore now rests upon what shall be considered to be the true intent and meaning of the last will of *Augustine Gambrill* deceased.

VOL. 1.—64.

By that will the testator gave the lands in the proceedings mentioned to his two sons *Richard* and *Augustine*, as tenants in common in fee; and to his son *William* he gave in fee another parcel of land; and then he says, "I give and devise to my daughters *Lydia, Susannah, Elizabeth, Margaret* and *Sarah Gambrill*, the *right, privilege* and *liberty* of residing and living in the houses with, and using and cultivating with themselves, and their negroes, and of keeping their negroes, stock, and all their other property thereon, and with them, in common with my sons, *Richard Gambrill, Augustine Gambrill* and *William Gambrill*, all my lands during the time that my said daughters, *Lydia, Susannah, Elizabeth, Margaret,* and *Sarah Gambrill*, shall remain single and unmarried."

The devises to his sons are in two separate and distinct parcels, and the interest given to his daughters he declares they shall enjoy "in common with his sons, *Richard, Augustine* and *William*." But there is no community of estate or interest given to his three sons. *Richard* and *Augustine*, take as tenants in common, but *William* takes in severalty. It is obviously not the intention of the testator, to blend that among his sons which he had so given to them in two distinct parcels. Hence he can only be understood to mean, that his five daughters shall take an interest in common with *Richard* and *Augustine*, in the lands given to them as tenants in common, and also an interest in common with *William* in the lands given to him in severalty. And consequently if the daughters were to be considered as tenants in common, of an estate for life defeasible by marriage as has been contended, they then must each of them be considered as a tenant in common, taking one *seventh* of the lands given to *Richard* and *Augustine*, and one *sixth* of that given to *William*, and not merely one *eighth* of that given to *Richard* and *Augustine*—and therefore for this reason alone the interlocutory decree of the twelfth day of July last, and the proceedings under it, are totally erroneous and cannot be allowed to stand.

But these five daughters of the testator do not take an *estate* for life, or any other *less estate* in common with their brothers, *Richard* and *Augustine*, in the lands in the proceedings mention-

ed, *which is susceptible of partition.* The difference of the testa-
tor's language and consequently in his intention, in the clauses of
his will, in which he provides for his sons, and for his daughters
is strong, and clear. To his sons *Richard,* and *Augustine,* he
gives an estate as tenants in common in fee of his dwelling plan-
tation; and to his son *William* he gives an estate in fee, and in
severalty of another parcel of land, and he then, charges all
his real estate thus fully disposed of, with certain uses, for the
personal benefit of five daughters, as long as they continue un-
married. In such case his meaning is expressed in terms pecu-
liarly apt, suitable, and proper. "I give and devise (he says)
unto my sons *Richard* and *Augustine,* and their heirs equally to
be divided between them, my dwelling plantation—and to my
son *William* and his heirs forever my land called *Young's Suc-
cess.*" And he then gives and devises to his daughters, not *an
estate,* of any kind, not an interest in any portion of his land for
life, during their celibacy, or for any time or upon any condition;
but as he himself perspicuously expresses it, "I give and devise
to my daughters, the *right, privilege,* and *liberty* of living in the
house with, &c. in common with my sons, all my lands, during
the time they shall remain single and unmarried."

The manifest object of the testator was to provide a home for
his daughters, and for that purpose he has charged all his real
estate, so far as was necessary to attain his object, and no far-
ther; in the dwelling in which he left them, or in any of the
houses on his land, he gave to each of them, the *right, privilege,*
and *liberty* of continuing to reside, or leaving, and returning to
as a home, as they thought proper, at any time during their ce-
libacy. And that this habitation, which he had thus given them,
might be made as comfortable as it had been, or as it was in
their power to make it, he gave them the *right, privilege* and
*liberty,* of using and cultivating all his lands, with *themselves and
their negroes,* and of keeping their negroes, stock, and all their
other property *thereon, and with them,* in common with his sons.
It is a devise of a personal right, privilege and liberty, to each
one of his daughters; a benefit which each one might take or
abandon at pleasure, so long as she remained single. It is not a

devise of any *real estate*, or of a *chattel interest* to the daughters, but it is a mere charge for their benefit; upon all the lands of the testator, which is inalienable, and indivisible in its nature. It is a benefit to be taken or relinquished only by the person to whom it is given, and with whose person it is inseparately connected. Each one of the daughters might release her privilege, or as the answer states, might rent her privilege to her brother, or the holder of the land for a certain sum per annum; but neither of them could alien or transfer her privilege to a stranger, and thereby introduce a new and unwelcome inmate into her brothers household. Nor could any one of them use and cultivate the lands, in any other manner than by *themselves and their negroes*, or put upon the lands, any negroes, stock, or other property, if she herself could reside on no part of the lands, because the testator has declared, it should only be *"thereon and with them."* It is an intangible privilege, extended over the whole of the testator's real estate, vested in each one of his daughters. It cannot be confined to the lands given to *Richard* and *Augustine*, or to those given to *William*, because it has been spread without distinction over them all. Its extent cannot be designated by any metes and bounds, or represented by any number of acres. It is an incorporeal right vested in each one of five persons, in her character of *daughter*, and *because* of that character, to dwell in any house, and to put her stock to graze in any pasture upon the whole of the testator's lands. It is therefore a mere *charge*, and not in any respect such *an estate*, in the land as is capable of being separated and partitioned off.

These charges are incumbrances upon the testator's real estate, which it appears he contemplated would be lessened, or extinguished, by the relinquishment, marriage or death of the five claimants, it seems are now reduced to one only, that is *Lydia* the present defendant, who is at this time in the perception and enjoyment of this right, privilege and liberty, which her father gave her, and which this court has neither the power nor the disposition to diminish, or impair by partition, or in any other manner whatever.

DECREED, that the bill of complaint be dismissed with costs. From which decree the complainant appealed to the Court of Appeals.

The cause was argued before BUCHANAN, Ch. J. EARLE, MARTIN and ARCHER, J.

*A. C. Magruder* and *Shaw*, for the appellant, contended, 1. That the appellee during her single life is entitled to one undivided eighth part of the land devised by her father, or if she is not so entitled, she is entitled to nothing in consequence of the devise to the daughters being unintelligible and therefore void. 2. A devise of the use of land, is equivalent to a devise of the land itself—they cited 3 *Bac. Abrid.* 391. 2 *Blk. Com.* 20.

*R. Johnson* for the appellee. The complainant has shown no right to ask for a partition of the lands. He shows no right or interest in himself in the land in question—no *exhibits* or title papers of any kind are filed, and the answer so far from admitting the title of complainant, affirms that the title is in another person. A party applying for a partition must show a title. *Hopkins vs. Stump*, 1 *Johns. Ch. Rep.* 111. If the answer does not deny the allegations in the bill, the complainant should have excepted to it, and he is not now at liberty to assume as true, what is not denied. *Wilkin and others vs. Wilkin*, 2 *Harr. & Johns.* 301. *Young vs. Grundy*, 6 *Cranch,* 51.

ARCHER, J. delivered the opinion of the court.

The complainant seeks a partition of the tracts of land described in the bill, alleging a seisin in seven-eights of said tracts, and that the respondent is in possession of, and exercising acts of ownership over the whole of the lands.

The answer of the respondent states that *Augustine Gambrill*, the father of the respondent, devised his dwelling plantation to his two sons, *Richard* and *Augustine Gambrill*, and to his five daughters; after which she states that by the intermarriage of three of her sisters, and the death of one of them, and by a sale from her brother *Richard*, to her brother *Augustine Gambrill*, she considered that she became entitled to one-third

of the land, and her brother *Augustine Gambrill*, to two-thirds thereof.

The cause is set down for hearing, and an interlocutory decree passes at *July term*, 1826, for partition, and commissioners are accordingly appointed to make partition. Upon the return of the commissioners at *October term*, 1826, the Chancellor dismissed the complainants bill, from which decree this appeal has been taken.

We do not feel ourselves called upon to express any opinion on the will of *Augustine Gambrill*, but shall decide the cause upon the bill and answer.

The bill alleges a *seisin* of seven undivided eighth parts of this land, and the seisin, should have been proved by the *complainant*, or admitted by the answer. The complainant relying upon the answer exhibited no proof of seisin, but set the cause down for hearing upon the coming in of the answer.

By a reference to the answer it will be found to contain no admission of any allegation in the complainants bill, except her possession of the land. Her answer is very defective and inartificial; and it is only indeed by inference that we can arrive at the conclusion, that she is speaking of the lands referred to in the bill, but considering what is only a matter of inference, as certain, and that the lands of which she speaks, are the lands of which the complainant seeks partition, there is not only no admission of right or title in the complainant but an averment of title in herself, and *Augustine Gambrill* her brother. In this stage of the cause the complainant was called on for proof of his allegations, and exhibiting none, but setting the cause down for hearing, his bill was rightfully dismissed by the Chancellor.

But supposing there is no denial of title in the answer, and that the material allegation in the bill, the seisin of the complainant is unanswered, this is clearly no admission of any unanswered fact. Chancellor *Hanson*, 2 *Harr. & Johns.* 301, says, if any material matter charged in the complainants bill, has been neither denied nor admitted by the answers, it stands on the hearing of the cause for naught, and in 6 *Cranch*, 51, *Young vs. Grundy*, Ch. J. *Marshall*, in delivering the opinion of the court,

says, "that if the answer neither admits nor denies the allegations of the bill, they must be proved upon the final hearing. Upon a question of dissolution of an injunction, they are to be taken as true." A respondent submitting to answer must answer fully, but if the answer be defective, and insufficient to meet the allegations and interrogatories of the bill, the complainant desiring a fuller response must except to the answer. If he do not he cannot rely on the silence of the respondent in relation to any material allegation, but must prove it.

DECREE AFFIRMED.