FRANCES T. BRADEN ET AL. *v.* JOSEPH M. COALE, EXECUTOR.

[No. 12, April Term, 1933.]

*Decided June 21st, 1933.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Benjamin L. Freeny,* for the appellants.

*Joseph C. Santry,* for the appellee.

ADKINS, J., delivered the opinion of the Court.

William H. Merryman, by his will, dated February 10th, 1931, provided, after the payment of all his just debts and funeral expenses, for a bequest to his sister-in-law of his household goods and effects, and a bequest of his watch and chain to Joseph M. Coale, and then, by the second and third clauses, as follows:

"Second: I give, devise and bequeath unto Miss Frances Braden, the sum of $300.00, unto Miss Nettie Braden the sum of $200.00, unto Mr. Joseph Braden, the sum of $100.00, unto Mrs. Mamie Braden the sum of $200.00, unto Mr. E. Scott Merryman, the sum of . $25.00, the aforesaid sums to be paid from the money I have on deposit in the Central Savings Bank of Baltimore City.

"Third: I give and bequeath the leasehold property number 3204 Gwynns Falls Parkway, located in the

City of Baltimore and State of Maryland unto Ethel Merryman Cladding and Joseph Coale, absolutely share and share alike."

All the rest and residue of his estate he gave to his said sister-in-law, and appointed the said Joseph M. Coale executor.

The executor in his inventory returned only the said leasehold property, which was appraised at $2,200. In his administration account he charged himself with the following items:

"Amount of inventory.....................$2,200.00
Cash.... ..............................    961.80
Penna. R. R. Co. Pension................     58.90
Penna. R. R. Co. Relief.................    250.00

Total..............................:$3,470.70"

And claimed allowances for expenses of administration, for funeral expenses, doctors' bills, an account due by the decedent, and for the following items, which appellants claim were not proper allowances, viz.:

"A ground rent on the said leasehold property
which became due April 1st, 1932........ $ 45.00
Ground rent due October 1st, 1932........    45.00
Repairs on the leasehold property after death
of decedent ..........................    104.00
Taxes for year 1932 due January 1st, 1932..  175.28"

The total allowances claimed amounted to $1,059.75, which were charged against the funds in the savings bank account and other cash without any contribution from the leasehold property, resulting in a distribution to the appellants, legatees under the second clause of the will, of only .25569 of their legacies, less collateral inheritance tax, and in the distribution to the legatees of the leasehold property less collateral inheritance tax.

It was admitted by the executor that there was in the Central Savings Bank at the time of the death of the testator $941. The testator died March 26th, 1932.

The appellants excepted to the administration account (1) because they were not allowed their legacies in full, less collateral inheritance taxes, claiming that they were specific legacies; (2) to the allowance for repairs on the leasehold property, taxes for the year 1932 on said property, and ground rents in full on said property. The orphans' court overruled the first exception on the ground that the legacies to the exceptants were not specific, but demonstrative legacies; overruled the exception to the allowance of taxes; overruled the exception to the allowance of ground rent due April 1st, 1932; sustained the exception to the allowance of ground rent due "On November 1st, 1932" (probably should be October 1st, 1932); and sustained the exception to the allowance for repairs.

We find no error in the ruling of the court on the allowances claimed by the executor, except that the legatees of the leasehold interest should have been charged with the few days' ground rent between the testator's death and April 1st, the rent being apportionable under chapter 495 of the Acts of 1929 (Code, art. 93, sec. 305c). The taxes paid were due on January 1st, 1932, prior to the death of testator, and the ground rent allowed was due a few days after his death. As the legatees were entitled to the income from the leasehold property from the date of the testator's death (*Miller, Construction of Wills,* sec. 129), the court properly disallowed the claim for the ground rent when it became due on October 1st, 1932. The bills for repairs to this property, which were for work on the floors and for inside painting, were also properly disallowed.

But we think the court was in error in not requiring the leasehold property to contribute proportionately to the accounts allowed the executor, and this without regard to whether the legacies to the appellants were demonstrative or specific. The principal difference between a demonstrative legacy and a specific legacy is that the legatee of a specific legacy can look only to the specific thing bequeathed, and, if that fails, he cannot share in the general assets of the estate (*Miller,* sec. 127); whereas the legatee of a demon-

154

strative legacy shares *pro rata* with the general legacies so far as there is failure in whole or in part of the fund out of which his legacy is to be paid, except where it appears from the will that the legacy is to be paid only from the designated fund. *Miller,* sec. 130.

In *Gelbach v. Shively,* 67 Md. 498, 501, 10 A. 247, it was held that a demonstrative legacy, that is, when the legacy is to be paid out of a designated fund, is so far specific that it will not be liable to abate with general legacies upon a deficiency of assets, except to the extent that it is to be treated as a general legacy after the application of the fund designated for its payment. See also, *Matthews v. Targarona,* 104 Md. 442, 450-451, 65 A. 60. In *Dugan v. Hollins,* 11 Md. 41, 44, 77, the testator directed his executors to "sell such portions of my bank or other stock, as shall produce the sum of $27,500, and pay therefrom" to Hammond and James the sum of $13,750 each. It was held that these legacies "are not to be treated as mere general pecuniary legacies. They are what are called demonstrative legacies, not strictly specific, but in the nature of specific legacies; that is to say, to the extent of the value of the fund or property on which they are chargeable, (when that does not exceed the amount of the legacy), they are to be treated, in some respects, as specific." In this case it was held that, as the stock on which these demonstrative legacies were charged was applied to the payment of debts, the legatees were entitled to a ratable contribution from all the specific legacies which had not been so applied. And in *Miller on Construction of Wills,* sec. 137, it is said: "Although demonstrative legacies do not abate until general legacies are exhausted, they do abate with specific legacies, after the general ones are exhausted, in order to pay debts. * * * A specific legacy may be required to contribute to a demonstrative legacy in some cases where the latter is in the nature of a specific legacy and its fund has been applied to the payment of debts and the specific legacy has not contributed." Citing *Dugan v. Hollins, supra.*

It is not necessary, therefore, to decide whether, technically, the legacies to appellants are demonstrative or specific.

They are at least in the nature of specific legacies, and stand on the same footing as the legacy of the leasehold property in relation to the payment of debts and costs of administration.

> *Order affirmed in part, and reversed in part, and case remanded, costs to be paid out of estate.*