GEORGE W. LEGGE, Executor, *v.* MARY CANTY ET AL.

[No. 41, January Term, 1939.]

*Decided February 22nd, 1939.*

The cause was submitted on briefs to BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, JOHNSON, and DELA-PLAINE, JJ.

*George W. Legge,* for the appellant.

*Edward J. Ryan,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

Margaret A. Sluss, at the time of her death in December, 1936, owned a house and lot known as No. 115 Alle-

gany Street, Cumberland, Maryland, which she disposed of by her will as follows: "My real property, designated as number 115 Allegany Street, Cumberland, Maryland, want retained in my estate by my executor and it is my desire that my son William C. Sluss, reside in said dwelling house as his home with his family, and that he permit and provide a room in said house for my sister Mary Canty, which shall be hers and for. her use as long as she lives and after the death of my sister Mary Canty, I direct my executor to sell said real property, number 115 Allegany Street either, at private or public sale, in his discretion, and the proceeds derived from said sale shall be divided equally, share and share alike between my sons William C. and Harry G. Sluss."

On June 24th, 1938, George W. Legge, the executor appointed by the will, filed, in the Circuit Court for Allegany County, in Equity, the petition in this case, against Mary Canty, sister of the testatrix, and William C. Sluss and Harry G. Sluss, her sons and only heirs at law. In it, after alleging the death of the testatrix, the probate of the will, the statement of a first executor's account, that William C. Sluss had moved into the property and had made a home there for Mary A. Canty where she was then residing, he further alleged that he had in his hands funds claimed by devisees and legatees, under other provisions of the will, that he as executor was bound to pay taxes and insurance on the property and provide for the upkeep thereof, and that, apart from the retained funds, he had no fund from which to meet those expenses and that it was necessary that the will be construed to determine whether he was authorized to sell the property "while there is a chance that a reasonable sum of money can be realized from said sale." He accordingly prayed the court to construe the will.

The two sons admitted the facts alleged in the petition and joined in the request for a construction of the will. Mary Canty neither admitted nor denied the facts alleged in the petition, but stated that the language of the will needed no construction, and asked that it be dismissed.

Upon those pleadings testimony was taken, the parties heard, and at the conclusion of the hearing the court dismissed the petition. From that decree the executor took this appeal.

It is apparent that the language of that provision of Mrs. Sluss' will is not free from ambiguity, and that its meaning is far from clear. Under such circumstances the right of the executor to have it construed by a court of equity is well settled. For as stated in *Miller, Construction of Wills*, sec. 5: "The construction of a will is, in general, a matter only for the courts of law or equity. The orphans' courts have no jurisdiction save what is conferred by statute, and are forbidden under pretext of incidental power or constructive authority to exercise any jurisdiction not expressly conferred by law; and among the powers conferred by law there is none authorizing them to determine the validity or invalidity of devises or bequests under a will." *Littig v. Hance*, 81 Md. 416, 434, 32 A. 343; *Pomeroy, Eq. Jur.*, secs. 1156, 1157. It is only where the language of the will is so clear as to permit no reasonable doubt of its meaning that a court of equity will refuse to construe it. For while what is said by Pomeroy to be the weight of authority supports the doctrine that a court of equity will not assume jurisdiction for the sole purpose of construing a will, and will never exercise jurisdiction to interpret a will which deals with and disposes of purely legal estates or interests (*Pomeroy, Eq. Jur.*, sec. 1156), in this state it is said by Miller to be "broadly established" that a court of equity will assume jurisdiction to construe wills, and he classified it with those jurisdictions of which Pomeroy says: "It cannot be denied that there are decisions by able courts which take another and less restricted view of the jurisdiction. According to the doctrine of these cases, the jurisdiction to construe wills is not necessarily connected with the general jurisdiction over trusts; the presence of a trust expressed or implied is not made a criterion of its existence nor of its proper exercise; it is regarded as arising wholly from the complicated character of provisions in a

will, from the difficulty of understanding their meaning, or the doubt and uncertainty as to the rights and interests of the parties claiming under them. In short the jurisdiction to construe a will exists and is exercised whenever its terms are really difficult or doubtful, or their validity is contested, without reference to the presence or absence of any trust." *Pomeroy, Eq. Jur.*, sec. 1157. And that classification is consistent with the decision and language in *Littig v. Hance, supra,* and the decision in *Woods v. Fuller,* 61 Md. 457, 461, although the conclusion and the opinion in that case are not in complete harmony. It may be assumed from that language that the testatrix intended (1) that the property should not be sold during the life of Mary Canty, (2) that during her life Mary Canty should have the privilege of occupying a room in it, (3) that William C. Sluss should have the privilege of using it as a home for himself and his family during the life of Mary Canty upon the condition that he permitted her, Mary Canty, to occupy a room in it, and (4) that at the death of Mary Canty the executor of Margaret A. Sluss should sell it and distribute the proceeds of the sale equally between William C. Sluss and Harry G. Sluss.

The testatrix had the power to defer any sale of the property until some fixed time, or until the happening of some contingency (*Alexander on Wills,* sec. 1481; *Ervine's Appeal,* 16 Pa. 256; 24 C. J. 168, n. 60; *Bagby on Exers. & Admrs.,* sec. 59; *Snook v. Munday,* 90 Md. 701, 704, 45 A. 1004; *Wilcoxson v. Reese,* 63 Md. 542, 544), and it seems clear enough in this case that, until the happening of the contingency named in the will, the death of Mary Canty, as a result of the testatrix's direction to him to convert the property into money and to distribute the same, and of the grant of power to the executor "to sell, mortgage or lease or in any manner to dispose of any or all of my property and estate as hereinbefore mentioned, without application to the Orphans' Court of Allegany County, Maryland, the Circuit Court for said County and State, or any other Court or Courts,

and without the purchaser or purchasers being required to see to the application of the purchase money," that title to the property involved in this appeal vested in him as a trustee. *Pomeroy, Eq. Jur.*, sec. 1011, and note 1a; *Tobias v. Ketchum*, 32 N. Y. 319, 327-331. But whether as trustee of a power or trustee of the estate, the apparent intention of the testatrix was that he should have the custody of the property (*Woerner on Am. Law of Administration*, sec. 339), as long as it remained unsold.

The testatrix did not directly grant to William C. Sluss any interest of any kind in the property, she merely expressed a desire that he with his family should reside in it as his home upon the condition that he permit Mary Canty to occupy a room in the dwelling. Such a right is in no sense a legal interest in the property which the grantee could alien but a mere privilege or liberty (*Warfield v. Gambrill*, 1 G. & J. 503, 508; 69 *C. J.* 431, n. 72), personal to the grantee, and differs from the right acquired under a grant or a "use" or of "the rents and profits" of land, which does convey an alienable interest in the property. 69 *C. J.* 385, n. 33; *Jarman on Wills*, \*p. 741; *Underhill on Wills*, secs. 484, 514; *Willett v. Carroll*, 13 Md. 459. There is manifest in the language of the will an intent that Mary Canty should have a room in the house for her life, which would be consistent with a purpose of granting to William a life estate in the property, but for these considerations, (1) she expressed a wish that the property be "retained in my estate by my executor," (2) she directed that it be sold after the death of Mary Canty, and (3) she did not directly grant to William any interest in it, and the expression of her desire that William reside in the house was no more than a direction to the executor to permit William to so use the property, if he, William, elected to do so. But while neither William Sluss nor Mary Canty is technically a life tenant, nor a tenant *pur autre vie* (*Tiffany on Real Property*, sec. 31 *et seq.*), their use of the property, special and limited though it be, would seem to impose upon them the same obligation, to keep it in reasonable repair and to

pay the taxes that may be assessed against it, that is assumed by a life tenant, for it is inconsistent with the apparent purpose of the whole will that the testatrix intended that such expenses should be paid from her estate. If the devise to William and to Mary Canty is to be given effect, it must follow that the tenants who occupy the property should pay such expenses, for if they do not occupy the property those expenses could be paid from the rents and profits therefrom, and, except for the direction that "it be retained in my estate by my executor," the testatrix expressed no intention that they should be deducted from the shares of the other beneficiaries. But by that direction the testatrix apparently meant only to insure that Mary Canty as long as she lived should have the privilege of occupying a room in the house. If she had intended that such expenses as taxes and repairs should be paid by her executor, she would have provided some fund from which such payments could be made. But after devising one parcel of real estate to William, one to Harry, and one to Mary Canty, she devised and bequeathed all the residue of her property to Mary Canty, except a legacy of $500 to Father John F. Eckenrode, and 115 Allegany Street. In that situation it should not be assumed, without a clearer expression of such an intention than the will affords, that she intended to charge the devise to Harry with any part of these expenses, which are indefinite both in amount and duration, and benefit only William Sluss and Mary Canty. If they decline to pay these expenses the property can be leased and the expenses paid from the rent.

The insurance presents a different question. Ordinarily, in the case of a life tenancy, the life tenant would insure his interest, and the remaindermen would insure their interests. But here, strictly speaking, there are no remaindermen, since the directions of the testatrix worked an equitable conversion of the property. 13 *C. J.* 869, 870, n. 40; *Stake v. Mobley,* 102 Md. 408, 62 A. 963; *Miller, Construction of Wills,* ch. XXX. The custody of the property is committed to the executor, and unless they

insure it, it would seem that he would have the power to do so, to protect the ultimate distributees of the estate against loss, and he would seem too to have the correlative right of charging their shares with any expenses reasonably incurred for that purpose. 24 *C. J.* 111. For, since the risk of loss is theirs, the cost of protecting their interests against loss should also be theirs.

It has been said that no will has a twin brother, but this particular provision appears to be without even remote relations. The construction given to it cannot be said to be quite free from doubt, but, unless the provision is to be stricken down for uncertainty, a result to be avoided if possible, the interpretation given appears to be that most consistent with its difficult and puzzling language.

It follows that the decree appealed from must be reversed and the case remanded.

> *Decree reversed, and case remanded for further proceedings in accordance with the views herein expressed, costs to be paid out of the funds of the estate.*