WALTER F. KNOX *v.* EDITH E. STAMPER, ET AL.
[No. 107, October Term, 1945.]

*Decided March 15, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*H. Richard Smalkin,* with whom were *Smalkin & Hessian* and *Allers & Cochran* on the brief, for the appellant.

*Lester L. Barrett,* with whom were *Michael Paul Smith* and *Smith & Barrett* on the brief, for appellees Edith E. Stamper *et al.,* executors and trustees of the estate of Edith E. Knox, deceased.

*Charles C. Lyons* for appellees Edith E. Stamper and John R. Stamper her husband, Miriam Thim and Clarence Thim, her husband, and Philander Chase Knox.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court of Baltimore County, in Equity, sustaining demurrers to the appellant's amended bill of complaint and dismissing the bill.

The amended bill of complaint alleged, among other things, that Edith E. Knox died testate on January 15, 1943. In her will she specifically bequeathed and devised practically her entire estate to her five children, Edith E. Stamper, Miriam Thim, Louis P. Knox, Walter F. Knox and Philander Chase Knox. John R. Stamper, husband of Edith E. Stamper, and Clarence Thim, husband of Miriam Thim, were joined in the proceeding because of their curtesy rights in fee-simple property. Letters testamentary on the estate were granted by the Orphans' Court of Baltimore County on January 21, 1943, to Edith E. Stamper and Fred J. Van Slyke, who filed a personal inventory listing personal estate in the amount of $5,303.12, consisting of a $5,000 Mortgage Guaranty Company Bond on the Madison Hotel, Atlantic City, N. J., valued at $4,590 and cash in the sum of $713.12. No administration account was filed, but on May 16, 1944, the executors filed a petition in the Orphans' Court alleging that the debts, costs and expenses of administration amounted to approximately $3,000, and that they had on hand cash in the amount of only $713.12. The petition prayed that the court "direct a sale of all or such parts of the personal property" as might be necessary to "discharge the just debts and claims against the decedent and against the estate." After answer and hearing, the Orphans' Court passed an order on July 31, 1944, directing the executors to sell, at public or private sale, "all of the personal property in the estate," for this purpose. No appeal was taken from that order, but on

August 2, 1944, the original bill in equity was filed, challenging the validity of the order of sale.

The amended bill alleged that if the order of the Orphans' Court were carried out, the complainant would be deprived of his rights and benefits in and to a specific bequest of a $10,000 mortgage; that by a proper interpretation of the will the debts of the estate should be prorated equally among the several specific bequests and devises according to their respective values; and that the specific devisees have refused to make any contribution. The bill also alleged that it was to the interest and advantage of all parties concerned that their respective liabilities be adjudicated.

The prayers of the bill were (a) that the executors be restrained from making the sale, pending determination of the liabilities of the parties, (b) that the equity court assume jurisdiction of the estate and construe the will to determine the liability of the several specific devises and bequests for the payment of debts of the estate, and to further order sale of such property as may be decreed to be liable, (c) that the devisees and legatees contribute proportionately to the payment of the debts, costs and expenses of administration of the estate, and (d) for other and further relief.

While the record does not disclose the exact nature or amount of the "debts, costs and expenses of administration," it is stated in the reply brief of the appellant that they consist solely of Orphans' Court costs, medical bills, taxes, commissions, counsel fees and funeral bills.

To understand the points raised in the amended bill, it is necessary to summarize the provisions of the will, which was filed as an exhibit with the bill. By item 1, the executors were directed to pay all the just debts and funeral expenses of the testatrix. By item 2, the testatrix left to Miriam Thim a mortgage of $2,500 "made to me by my brother-in-law, Charles Knox" upon his property in Anne Arundel County but if it had been paid and released at the time of her death, then in lieu thereof, the sum of $2,500. She also left to this daughter

her "share" in certain fee simple property in Harford County. By item 3 she provided: "I give, devise and bequeath to my son, Walter Knox, the mortgage for ten thousand dollars ($10,000.00) covering the store property and premises situate at the Southwest corner of Taylor Avenue and Loch Raven Boulevard, Baltimore County, Maryland, free, clear and discharged of said lien. In event that at the time of my death said mortgage shall have been paid and released, then -in lieu thereof I bequeath to my said son, Walter Knox, the sum of ten thousand dollars ($10,000.00) absolutely." By item 4, she left to Edith E. Stamper and Fred J. Van Slyke, in spendthrift trust for her son Louis P. Knox, for life, with remainder to his children, a mortgage guarantee bond of $5,000 on hotel property in Atlantic City, N. J. In the event the bond had been "redeemed" at the time of her death, she bequeathed a sum equivalent to the "net proceeds derived from the sale of said bond," upon the same trusts. By item 5, she left her home property of some fourteen acres in Baltimore County, to Edith E. Stamper and Philander Chase Knox in fee simple, but on condition that they have the joint right to occupy the premises free of rent until Philander reached the age of twenty-five years, with a right in Edith, after Philander became twenty-one years of age, to buy his interest for $10,000, said sum to be held in spendthrift trust for him until he became twenty-five, with the remainder over if he died before twenty-five without children. By item 8 she provided that the explosive business of Louis P. Knox Company should "continue as at present using my home place for a place of sale and paying a reasonable rental as provided in the will of my late husband, until my said home place is finally disposed of." In other items she confirmed conveyances of other properties to her children, made or to be made in her lifetime, but provided that if she should convey to them any property specifically mentioned in the will, the grantee shall have "such property or properties deducted from his or her share," but this provision "shall not be construed to include deeds

of lots out of my home place." By item 11, she left the residue to her five children, share and share alike.

Louis P. Knox, Jr., and Margaret Knox, his wife, filed an answer to the amended bill, submitting to the jurisdiction of the court. Identical demurrers to the amended bill were filed by the other defendants on several grounds: (1) Misjoinder of parties, (2) multifariousness, (3) lack of jurisdiction, (4) that "it clearly appears that the specific legatees are not entitled to contribution from the specific devisees, and the will being plain and unambiguous there is no reason for construction of same," and (5) that the amended bill is prematurely brought. The chancellor, ignoring other objections, held that the specific devisees could not be required to contribute ratably with the specific legatees, for payment of debts and costs of administration, in the absence of an expressed intention for contribution in the will. He sustained the demurrers on this ground and dismissed the amended bill.

The order of the Orphans' Court which prompted the filing of the original bill directed the sale of "all of the personal property in the estate." This order was somewhat unusual, in that it did not specify the particular property to be sold. The petition upon which the order was based is not in the record. However, we assume that the order was intended to apply only to the personal property included in the personal inventory, i. e., the $5,000 bond. See Bagby, Exec. & Admrs., Secs. 50, 57; Code, 1939, Art. 93, Sec. 292. Ordinarily, and for most purposes, the mortgages owned by the testatrix which she left to Miriam Thim and to Walter Knox would be classified as personal property, but under the established practice in the Orphans' Court such assets are not listed in the personal inventory but are listed as debts due to the estate. Handy v. Collins, 60 Md. 229, 239, 45 Am. Rep. 725; Code, 1939, Art. 93, Sec. 232. If we are correct as to the scope of the order, there would be no occasion for a court of equity to enjoin the sale, at the instance of a party other than the person to whom

the particular asset was bequeathed, even if the equity court could interfere in a matter clearly within the jurisdiction of the Orphans' Court. Compare *Gaver v. Gaver,* 176 Md. 171, 189, 4 A. 2d 132.

Equity has jurisdiction, however, to construe a will (*Legge v. Canty,* 176 Md. 283, 4 A. 2d 465), and we see no force in the suggestion that a bill for that purpose is prematurely brought, merely because it is filed before rather than after a sale. Certainly such a bill might be brought on the theory of declaratory relief. It may be noted, in this connection, that Louis P. Knox did not oppose the sale, and that the will itself, in the phrase "net proceeds derived from the sale of said bond," seemed to contemplate the sale of the bond, under some circumstances. If a proper case is presented for the construction of a will, obviously all of the beneficiaries, and their respective spouses, are proper parties, and a bill for this purpose is not multifarious merely because their interests are not identical.

The question presented, therefore, is not whether equity has jurisdiction, but whether, and to what extent, Louis P. Knox is entitled to contribution from the complainant, Walter Knox, for the prospective deficiency in his legacy of the bond, or its cash equivalent, due to the insufficiency of the residue to pay debts, costs and expenses of administration. Louis P. Knox has not claimed any right of contribution, but he has submitted his case to the jurisdiction of the court.

The learned chancellor took the view that Walter Knox was liable to contribute *pro rata* with Louis P. Knox and Miriam Thim, to the extent of the value of their legacies of personal property, but was not entitled to contribution from any devisees of real property. In reaching these conclusions, he assumed that the question of contribution between legatees should be determined and enforced in the Orphans' Court and that Walter Knox was a legatee of personal property.

In *Miller v. Weber,* 126 Md. 658, 95 A. 962, on direct appeal from an order of distribution in the Orphans'

Court, this Court construed the will, and held that certain legatees should contribute *pro rata* to debts and costs. Likewise in *Braden v. Coale,* 165 Md. 150, 166 A. 730, it was held, on direct appeal from the Orphans' Court, that leasehold property should contribute ratably to payment of costs and expenses. See also *Childs' Estate v. Hoagland,* 181 Md. 550, 30 A. 2d 766.

The general rule is that the personal estates of deceased persons should ordinarily be administered and finally distributed in the orphans' courts. *Woods v. Fuller,* 61 Md. 457. It is recognized, however, that equity will lend its aid where the Orphans' Court is unable to afford a complete and satisfactory remedy. *Miller, Constr. of Wills,* Sec. 7, p. 27. But the mere fact that it is necessary to surcharge a distributive share of personal property is not alone sufficient to require the intervention of equity.

We think the mortgage passing to Walter Knox was personal property. In *Chase v. Lockerman,* 11 Gill & J. 185, 35 Am. Dec. 277, a bill in equity was filed by a creditor of the estate, against the executors of Chase and his legatees and devisees. The creditor's claim was based upon a partial assignment of a promissory note executed by the testator in his lifetime. The executors set up in their answer that the personal estate of the testator was insufficient to pay his debts, and contended that all of the specific legatees and devisees should contribute ratably to the payment of this and certain judgment debts. Pursuant to an order of the chancellor, the deficiency was charged equally to the five children of the testator. On appeal, the court held that as to specialty debts, all of the legatees and devisees should contribute; but as to simple contract creditors, no contribution could be had from devisees of the real estate. The court held that money due the testator under a decree in chancery was a specific legacy, but that a mortgage due to the testator was to be treated as real estate specifically devised. The court said: "As to the character of the mortgage from Richard Lockerman to the testator, and

whether the same is to be considered as real or personal estate, we are of the opinion that it must be considered as belonging to the class of real and not personal assets. There is no doubt of the general rule, that a mortgage interest before foreclosure, is considered in equity as a chattel interest, and personal assets, and belongs to the executors; and though the technical fee may descend to the heir, he takes it in trust for the personal representatives. * * * This no doubt is the general aspect under which it is viewed in a court of equity; but it is equally well settled, that the mortgagee, may as between his real and personal representatives, by a manifest declaration of his intent, convert the mortgage, as well as any other part of his personal estate into land; and make it pass accordingly. 1 *Williams on Executors,* 432; 2 *Vernon* 581. * * * The lands mortgaged in this case are devised to the trustee and his heirs, and after the death of the *cestui que* trust, and her husband [Richard Lockerman, the mortgagor] (who in case of his surviving his wife is to have permission to occupy them free from rent and interest) they are devised to their children and their heirs, to be equally divided between them. The intention of the testator, therefore, to treat the mortgage as real estate, is we think, most clear and indisputable."

In the case at bar, the testatrix provided in item 3: "I give, devise and bequeath to my son, Walter Knox, the mortgage * * * covering the store property and premises * * * free, clear and discharged of said lien." But the word "devise" loses most of its significance when we observe that the same expression "give, devise and bequeath" was used throughout the will; and the intention to discharge the lien merely evidences an intention to forgive the indebtedness. *Strahorn v. Rowe,* 153 Md. 364, 138 A. 232; *Howard v. Hobbs,* 125 Md. 636, 645, 94 A. 318. Unlike the disposition in *Chase v. Lockerman, supra,* the testatrix did not use the typical words of inheritance. We conclude the testatrix did not treat the mortgage as real estate.

. We come, then, to the fundamental question in the case, as to whether the specific devisees must contribute, or in other words, whether their devises must abate proportionately. The case of *Chase v. Lockerman, supra,* is directly in point on this question, and was followed in *Dugan v. Hollins,* 11 Md. 41, where the claim that created the deficiency was upon a promissory note given by the decedent. Judge Bartol, speaking for the Court, said at page 77 of 11 Md.:

"This court considers the law as settled in Maryland, that if there be sufficient personalty for the payment of debts, a simple contract creditor cannot resort to the realty for payment, when the realty is devised, and is not charged with the debts. * * * If a specific legacy be taken for the payment of a simple contract debt, while the legatee would be entitled to contribution from other specific legacies, he cannot charge with contribution the real estate which is devised.

"These last two rules were expressly recognized and asserted by the Court of Appeals in the case of *Chase v. Lockerman,* 11 Gill & J. 185, decided sixteen years ago. That case has not been impunged, as was argued at the bar, by the decision in *Alexander v. Worthington,* 5 Md. 471; and has so long been considered as established law in Maryland, that this court is not disposed to disregard its authority.

"Now let us apply these rules to the case before us. It is obvious that inasmuch as the debts, to the payment of which the demonstrative legacies have been applied, were simple contract debts, the complainant is not entitled to subject any of the real estate of Cumberland Dugan to contribution for the payment of any claim which may be due him as legatee. Nor is any portion of said real estate (the same having all been devised) liable for any claim of complainant as creditor, until after the whole personal estate, including the legacies, shall have been exhausted."

The case of *Addison v. Addison,* 44 Md. 182, did not overrule these prior decisions, but relied upon *Chase v.*

*Lockerman, supra,* for the rule in regard in specialty. debts. The court was dealing with a case where a legacy had been given to a widow in lieu of dower and "all her rights as widow," and it was held that this constituted her, "in equity, a creditor of the deceased to that extent," and that "the legacy is a lien on the land by implication." The court also said: "The creditor comes in by paramount right, he is entitled to be preferred by law to volunteers, and the law having cast the liability primarily on the personal estate, in favor of the heir, in cases of descent, by analogy has applied the same rule in favor of the devisee of real estate." In the later case of *Wheeler v. Addison,* 54 Md. 41, the Court said: "In the former appeal the Court held, that Mrs. Addison, by the acceptance of the legacy of $5,000, in lieu of all other rights in the estate of her husband, became a quasi creditor of her husband's estate, and her claim was a charge upon both real and personal estate alike, and that the two estates must contribute *pro rata* to the discharge of that claim." See also *Duttera v. Babylon,* 83 Md. 536, 35 A. 64, holding that a legacy in lieu of dower is for a valuable consideration, and not a mere donation.

The appellant contends that since taxes, Orphans' Court costs, funeral bill and commissions are regulated by statute, they should be treated as specialties within the meaning of the rule. He apparently concedes that medical bills would be simple contract debts, although they are mentioned in the statute, Code, 1939, Art. 93, Sec. 5. In *Sterling v. Reecher,* 176 Md. 567, 6 A. 2d 237, 238, this Court quoted 1 *Wood, Limitations of Actions,* 6th Ed., Sec. 29, for the statement that "all instruments under seal, of record, and liabilities imposed by statute are specialties." But in holding that a suit by a receiver to enforce the double liability of stockholders in a trust company was upon a specialty, the Court said: "The Maryland statute, has, as stated, now provided an exclusive remedy; it has not continued an old one, or allowed its continuance." In the case at bar the costs and other items mentioned are accorded a statutory order of prefer-

ence in payment (Code, Art. 93, Sec. 5), but it does not follow that they are to be classed as specialties within the meaning of the rule in question. We are not here dealing with any question of limitations, but with the right of contribution between specific legatees and devisees. We must therefore examine the legal principle upon which the rule is based.

The rule as to specialties was based upon the Statute Against Fraudulent Devises, 3 & 4 W. & M. Ch. 14; 2 *Alexander's British Statutes* 784; *Long v. Short*, 1 P. Wms. 403; *Chase v. Lockerman, supra.* In *Van Bibber v. Reese*, 71 Md. 608, 611, 18 A. 892, this Court, speaking through Judge McSherry, said: "By the common law, as is well known, the heir of a deceased debtor was only bound for the payment of the specialty debts of his ancestor, because of the express terms of the obligation; and then only in respect and to the extent of the real assets descended. And if a debtor, instead of suffering his real estate to descend to his heirs, devised it to any person; or if the heir aliened the land before an action was brought against him, the creditor was without a remedy. To obviate this injustice the statute of 3 & 4 Wm. & Mary, Ch. 14, was enacted, and the heir and devisee were made liable to the extent of the land so acquired * * *. But the legislation of this State (Act of 1785, Ch. 72, Sec. 5; Code, Art. 16, Sec. 242), goes much further, and makes the land devised or descended liable to be sold for the payment of any demand due by the decedent, if the personal estate left by him should be insufficient to discharge all his debts and the costs of administration. Obviously this liability is not absolute, but only conditional. It depends upon the insufficiency of personal assets. * * * His personal estate is the primary fund to which resort must be had. If that be sufficient, a court of equity has no jurisdiction to decree a sale of his real estate for the payment of his debts."

In *Tait v. Safe Deposit & Trust Co.*, 70 F. 2d 79, 81, the Circuit Court of Appeals for the Fourth Circuit said: "Under the law of Maryland real estate is not subject

to the payment of the expenses of administration of the estate of a decedent." The exhaustive opinion of Judge Chesnut on the point (54 F. 2d. 387) was affirmed. In *McGaw v. Gortner*, 96 Md. 489, 492, 54 A. 133, 134, it was held that the debts referred to in the statute were limited to those "due by the decedent in his lifetime." See also *Carey v. Dennis*, 13 Md. 1, 13. We conclude that there is no basis for the contention that devisees can be made to contribute to the payment of costs and expenses of administration in the case at bar.

In regard to inheritance taxes, it is true that the statute makes the amount of the tax a lien upon real estate (Code, 1939, Art. 81, Sec. 121) and authorizes the Orphans' Court to sell real estate (Code, 1939, Art. 81, Sec. 122; *Simpson v. Ashman*, 184 Md. 493, 41 A. 2d 477). But the power can only be exercised if the parties liable to pay the tax, *i. e.*, the distributees, neglect or fail to pay it. This statute has no application to the case at bar, the creditor being the State and the obligation to pay resting upon each distributee. Compare *Fetting v. Flanigan*, 185 Md. 499, 45 A. 2d 355, 360.

The appellant contends that the result is inequitable, and that in other States, according to the great weight of authority, contribution would be allowed. See note 42 *A. L. R.* 1519; *Pomeroy, Equity*, 5th Ed., Sec. 1137; *Page, Wills*, Lifetime Ed., Secs. 1391, 1508, 1561. But when the cases are examined, it is found that the change was brought about by statutory enactment, or that the courts have declined to follow the English authorities. Whatever arguments there may be in favor of abolishing the common law distinctions between the liabilities of real and personal property, we are not prepared to do so, in the absence of legislative action and in the presence of authoritative decisions in this State decided after the passage of the Act of 1785.

The appellant also contends that the question should be resolved, not by application of fixed rules regarding priorities or resort, but by the intention to be gathered from the will. But we agree with the learned chancellor

below that there is nothing in the will to indicate that the testatrix had in contemplation the contingency which occurred, *i. e.*, the insufficiency of the residuary estate to pay costs and expenses of administration. Having expressed no intent, it may be presumed that the will was drawn with the established principles, relating to the order of priorities in the abatement of legacies, in mind. The direction to pay just debts and funeral expenses is not sufficient to charge the realty with payment; the personal estate remains the primary fund. *Piper v. Tuck,* 26 Md. 208; *White v. Kauffman,* 66 Md. 89, 5 A. 865.

*Order affirmed, with costs.*