# BENEDICT I. CLARKE *v.* GEORGE FRANCIS CLARKE

[No. 88, September Term, 1980.]

*Decided October 5, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Thomas F. Mudd,* with whom were *Mudd, Mudd & Munday, P.A.* on the brief, for appellant.

*Oliver R. Guyther* for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

We granted certiorari in this case to consider an issue regarding the respective powers of an orphans' court and an equity court in the administration of a decedent's estate.

Helen Marie Clarke died testate on January 13, 1977, survived by nine children, including the plaintiff in this case, Benedict I. Clarke, and the defendant George Francis Clarke, who was sued in his capacity as the personal representative for his mother's estate. Aside from personal property valued at approximately $1,000, the decedent's only asset was a 20 acre farm. The decedent's will contained the following disposition of her property:

> "In the Name of God, Amen I, Helen Marie Clarke being of sound and disposing mind and memory, and considering the uncertainty of this life, do make, publish and declare this to be my Last Will and Testament, as follows: First, after my lawful debts are paid, I give George Francis Clarke the authority to be the administrator of my entire estate, I give Ignatius Benedict Clarke and Catherine Mae Clarke, permission to farm the land for a period of five (5) years, if they so desire. At the end of that time if my sons and daughters so desire, the farm is to be sold and the money equally divided among the surviving sons and daughters of my marriage to Joseph George Clarke. If any of my children want to buy the farm, they will have the right to do so at not more than Two Thousand Dollars ($2,000) per acre."

Proceedings in the orphans' court extended over a considerable period of time, and included a variety of petitions, hearings, and court actions. However, only a few of these

proceedings are relevant to this appeal and will be discussed here.

In August 1979, the defendant George Francis Clarke, as personal representative, petitioned the Orphans' Court for St. Mary's County for authority to sell the real estate of the decedent, pursuant to Maryland Code (1974), §§ 7-401 and 7-402 of the Estates and Trusts Article, claiming that a sale of the farm was necessary for payment of the decedent's debts and administration expenses. The orphans' court, deciding that it was impractical to sell only a portion of the property, ordered him "to sell all of the real estate of the Helen Marie Clarke Estate by a *public or private sale.*" (Emphasis supplied.)

On September 14, 1979, Benedict I. Clarke filed a motion in the orphans' court, alleging that a public sale of the real estate was set for September 29, 1979, and requesting that the court "stay and cancel [the] public sale." Benedict Clarke also tendered an offer to purchase the farm for either a total of $40,000, or $2,000 per acre. The orphans' court denied Benedict Clarke's motion on September 25, 1979.

Three days later, on September 28, 1979, Benedict Clarke instituted the present action by filing a bill of complaint "for construction of will and injunction" in the Circuit Court for St. Mary's County. He sought an injunction to restrain the *public* sale of real estate scheduled for the next day. The plaintiff also sought construction of the provision of his mother's will which granted to him and Catherine Clarke the right to farm the land for five years, contending that this right could be exercised either jointly or individually, and without payment of rent or sharing of revenues. Finally, the plaintiff sought construction of the purchase provision in the will, contending that his offer to purchase the farm for $2,000 per acre complied with the terms of the will which gave a "right" to purchase the property, while obviating the need for a public sale of the real estate by providing sufficient funds for administration of the estate.

On September 28, 1979, the circuit court issued an ex parte order, enjoining a *public* sale of the property through

October 8, 1979. While the injunction was in force, the defendant George Clarke, as personal representative, negotiated a private contract of sale. The buyers under the contract were himself and Joseph Clarke, another of the decedent's surviving children, and the selling price for the farm was $80,000. After the expiration of the circuit court injunction, the orphans' court ratified the contract for the sale of the real estate to George Clarke and Joseph Clarke. There has been no contention in this case that the contract of sale was fraudulent or in breach of the personal representative's fiduciary duty. No appeal was taken from the order of the orphans' court ratifying the contract of sale.

A hearing was held in the circuit court on February 29, 1980, at which time it was shown that, unless the farm were sold, there would be insufficient money in the estate to pay inheritance taxes, other taxes, the funeral bill, court costs, attorney's fees, and other expenses. The bills amounted to $4,664, not including income taxes due, court costs and personal representative's commissions which had been waived, and there was only $856.94 to pay those bills. The plaintiff, on the other hand, argued that there had never been a construction of the will provisions granting a right to farm the land for five years and a right to buy the farm, and that the equity court should construe these two provisions. At the conclusion of the hearing, the chancellor held that the orphans' court had jurisdiction to order a sale of the property in order that the claims and expenses could be paid. The chancellor thus declined to exercise jurisdiction and dismissed the action. The plaintiff appealed to the Court of Special Appeals, and we issued a writ of certiorari prior to any proceedings in the intermediate appellate court.

The position of the plaintiff George Clarke is that the orphans' court lacked "authority to deal with all of the issues in the case" because only an equity court could construe the provisions of the will relating to the right to farm for five years and the right of any children to buy the farm, and only an equity court could have granted "the injunctive relief sought by the appellant." (Appellant's brief, p. 5). The plain-

tiff argues that for these reasons the chancellor erred in refusing to construe the two provisions of the will.

The law is clear, as the plaintiff argues, that when the jurisdiction of the orphans' court is "inadequate and incomplete" so that the orphans' court is unable to resolve the issues in a case and afford the proper remedy, equity will ordinarily exercise jurisdiction, and proceedings in the orphans' court should be stayed. *Jackson v. Jackson,* 260 Md. 138, 142, 271 A.2d 690 (1970); *Shapiro, Adm'r v. Ryan,* 233 Md. 82, 88-92, 195 A.2d 596 (1963); *Tribull v. Tribull,* 208 Md. 490, 499-503, 119 A.2d 399 (1956); *Knox v. Stamper,* 186 Md. 238, 245, 46 A.2d 361 (1946); *Noel v. Noel,* 173 Md. 147, 151, 195 A. 322 (1937). However, where "the issues involved [are] not beyond the authority of the Orphans' Court," then "the institution of the proceedings in equity [does] not oust the jurisdiction of the Orphans' Court," and the equity court should decline to exercise jurisdiction. *Shapiro, Adm'r v. Ryan, supra,* 233 Md. at 90-91. *See Jones, Adm'x v. Jones,* 41 Md. 354, 360-362 (1875). *See also Jackson v. Jackson, supra,* 260 Md. at 142; *Payne v. Payne,* 136 Md. 551, 111 A. 81 (1920). The essential question in this case, therefore, is whether the chancellor erred in concluding that the issues were within the authority of the orphans' court.

It has often been pointed out that an orphans' court is a court of very limited jurisdiction. Section 2-102(a) of the Estates and Trusts Article of the Code specifically provides that the orphans' court "shall not, under pretext of incidental power or constructive authority, exercise any jurisdiction not expressly conferred." *See also, e.g., Crandall, Exec. v. Crandall,* 218 Md. 598, 600, 147 A.2d 754 (1959); *Inasmuch Mission v. Merc. Tr. Co.,* 184 Md. 231, 234-235, 40 A.2d 506 (1945); *Legge v. Canty,* 176 Md. 283, 286, 4 A.2d 465 (1946). On the other hand, "[p]rimarily . . . the administration of a decedent's estate is committed to the Orphans' Court." *Tribull v. Tribull, supra,* 208 Md. at 499. Or, as stated in *Knox v. Stamper, supra,* 186 Md. at 245: "The general rule is that the . . . estates of deceased persons should ordinarily be administered and finally distributed in the orphans' courts."

Turning to the matter of will construction, there are circumstances when equity should exercise jurisdiction. If a substantial issue as to the meaning of a will exists, involving ambiguous or intricate provisions, construction of the will is generally for the equity court and beyond the authority of the orphans' court. As Judge Delaplaine said for the Court in *Inasmuch Mission v. Merc. Tr. Co., supra,* 184 Md. at 234: "The jurisdiction of equity in the construction of wills ... arises from the difficulty of understanding the meaning of complicated provisions in a will, or the uncertainty as to the rights and interests of the parties claiming under them." *See Jackson v. Jackson, supra,* 260 Md. at 141; *Legge v. Canty, supra,* 176 Md. at 286; 1 P. Sykes, *Probate Law and Practice,* § 271 (1956).

However, it is settled that some issues of construction are for the orphans' court. Where the language of the will is such "as to permit no reasonable doubt of its meaning ... [,] a court of equity will refuse to construe it," and construction is for the orphans' court. *Legge v. Canty, supra,* 176 Md. at 286. The orphans' court has the power of construction for the purpose of deciding who shall take under a will and what they shall take. This was summarized in *Estate of Childs v. Hoagland,* 181 Md. 550, 551-52, 30 A.2d 766 (1943), as follows:

> "The Orphans' Courts of this State have the power ... to determine who are legatees under a will, and what is given to such legatees. The determination of such questions necessarily involves a construction of the will. That was determined as early as *Pole v. Simmons,* 45 Md. 246, and that decision has been followed by a number of others, including *Gallagher v. Martin,* 102 Md. 115, 62 A. 247; *In re Hagerstown Trust Co.,* 119 Md. 224, 86 A. 982; *Redwood v. Howison,* 129 Md. 577, 99 A. 863; *Boland v. Ash,* 145 Md. 465, 125 A. 801; *Collins v. Cambridge Hospital,* 158 Md. 112, 148 A. 114; *Longerbeam v. Iser,* 159 Md. 244, 150 A. 793."

In *Hagerstown Trust Co., Ex. of Mealey,* 119 Md. 224, 86 A. 982 (1913), the Court explained that unless the orphans' court had this power of construction, the estate of every person who died testate would be forced to the double expense of administration in the orphans' court and then a suit in equity for a construction of the will and payment according to its provisions. 119 Md. at 232-233. *See also Davis v. Davis,* 278 Md. 534, 537, 365 A.2d 1004 (1976).

In the present case, if it were necessary to construe the provision of the will giving the plaintiff and one of the other children the right to farm the land for five years, or if it were necessary to determine the meaning of the provision relating to the right to purchase the farm by any of the children, these two issues of construction would probably be for the equity court under our decisions, particularly *Legge v. Canty, supra.* The orphans' court, however, did not construe either of those provisions. Furthermore, in light of the facts of the case, these two issues of construction need not be resolved. Regardless of the meaning of either of these two will provisions, the contested orders of the orphans' court were within that court's authority.

It has been undisputed in this case that the assets of the estate, other than the farm, were insufficient to pay the just debts and expenses of administration. Clearly, under such circumstances, the orphans' court had authority to order a sale of the farm so that the claims and expenses could be paid before distribution to the legatees, and the shares of the legatees abated to the extent necessary.[1] *Knox v. Stamper, supra,* 186 Md. 238; 1 P. Sykes, *Probate Law and Practice,* § 614 (1956). *See* Code (1974), §§ 7-304(a), 7-307, 7-401 (including the comment following the revisor's note), 7-402, 8-105, 9-103 of the Estates and Trusts Article. Moreover, under the unambiguous language of the decedent's will, the provisions concerning the right to farm the land for five years, and then a sale of the farm, become effective only

---

1. Since 1969, there has been no distinction between personalty and real property in this regard. *See* Code (1974), §§ 1-101, 1-301, 9-103 of the Estates and Trusts Article, including the comments following the revisor's notes.

"after my lawful debts are paid." As an immediate sale of the land was necessary to pay the decedent's lawful debts, the provision of the will concerning permission for two of the children to farm the land for five years, and the provision regarding a sale of the farm, including the "right" of any of the children to buy it, could never be effective regardless of how they might be construed.

The plaintiff's argument in this Court appears to be that, if the provisions of the will regarding a sale of the farm to any of the children were construed as he believes they should be, the farm could have been sold to him, with the proceeds being ample to pay the debts and administration expenses. However, in the circuit court, he was also claiming a right individually to farm the land for five years, without the payment of rent or revenues to the estate. Furthermore, the provisions in the will for the sale of the land, which follow the provision dealing with the right to farm it for five years, unequivocally become effective "[a]t the end of that time." Under the clear terms of the will, what right, if any, the plaintiff may have had to require the sale of the land to him upon the terms offered, could only arise "after [the decedent's] lawful debts are paid" and "at the end" of the five-year period for farming the land. Because an immediate court-ordered sale of the land was necessary for the payment of claims and administration expenses, the provisions in the will for a later sale of the land, whatever their meaning, became nugatory.

Under the circumstances of this case, the orders of the orphans' court, of which the plaintiff complained, were within the authority of that court. The chancellor, therefore, properly declined to exercise jurisdiction.

*Judgment of the Circuit Court for*
*St. Mary's County affirmed.*
*Appellant to pay costs.*